## JOHN ELLIOTT *v.* JOHN BASTIAN AND OTHERS,. RESPONDENT, EDWARD AUSTIN AND WILLIAM TIPPING, APPELLANTS.[1]

1. JUDGMENT AGAINST DECEASED PARTY.— VALIDITY.— Where a. court has jurisdiction of the parties and subject matter of an action, a judgment rendered. therein against a party after his. death, though erroneous, is not void, if his death does not appear from the judgment roll.

2. ID.—ID.—MOTION TO SET ASIDE.—WHEN TO BE MADE.—PRAC- TICE.—SEMBLE.—DELAY IN EQUITY.—Where a judgment has been taken against a party after his death, the proper way to- call the court's attention to it and to have the judgment set. aside as erroneous and voidable is by motion supported by affidavit, or otherwise. But where there is a statute (2 Comp.. Laws 1888, § 3256) limiting the time within which a party or- his representatives may be relieved by the court from a judg- ment taken through mistake, inadvertence, surprise or ex- cusable neglect, to six months after the term at which the- judgment was rendered, a motion by the representatives of a deceased party, after the statutory time has expired, to set. aside a judgment entered against him after his death is not. the proper remedy unless the death appears from the judg- ment roll. *Semble,* that in such a case a bill in equity is the- proper remedy by which all the parties interested in the sub- ject matter of the litigation may be brought before the court, and issues regularly joined on all the facts connected with the- litigation, including those explanatory of the judgment and. the delay.

(No. 560.   Decided June 17, 1895.   40 P. R. 713.)

APPEAL from the District Court of the First Judicial District.   Hon. H. W. Smith, *Judge.*

Action by Lord Claude Hamilton and another against. John Bastian and others to recover possession of a mine.

<hr>

[1] Petition for a rehearing denied Nov. 6, and appealed to the- Supreme Court of the United States Dec. 21, 1895.

Plaintiff Hamilton having died, the action was continued in the name of his coplaintiff, John Elliott. The American Eagle Mining Company having succeeded to the interest of the original defendants, was made defendant and judgment by default was entered in its favor. Plaintiff Elliott having died, Edward Austin and W. F. Tipping claiming to be his representatives, moved to set aside the judgment, and from an order denying the motion, they appeal. *Affirmed.*

*Mr. C. S. Varian,* for appellants.

Appellants contend for three propositions: *First.* The remedy by motion was, under our system, the proper one. *Second.* The judgment under the circumstances disclosed here, was void and a fraud upon appellants, those they represent, and the court itself, and should be set aside. *Third.* The transfer of interest to the Ajax Mining Company is not in itself a reason for remitting appellants to the tedious and expensive remedy by bill in chancery. The writs of *coram nobis* and *coram vobis* have fallen into desuetude in most of the states, and motion supported by affidavit or otherwise is the proper remedy to set aside a judgment entered against a party after his death. 1 Black Judg. p. 238, § 200; Freeman Judg. § 93; *Pickett's Heirs* v. *Luderwood,* 7 Pet. 148; *Brownson* v. *Schulten,* 104 U. S. 417; *Phillips* v. *Negley,* 117 U. S. 673; *Hickman* v. *Fort Scott,* 141 U. S. 419; *R. R. Co.* v. *R. R. Co.,* 32 Fed. 530.

This judgment was given when the plaintiff was dead, which fact was unknown to the court. The motion brings to the knowledge of the court this fact, and thus stamps the record of its judgment with fatal error. There seems to be some confusion among the authorities as to whether a judgment taken against a person after his death is absolutely void or only voidable. Both Mr. Black and Mr.

Freeman seem to think that the judgment is not void, but only voidable. 1 Black, § 200; Freeman, § 153. But all the writers concede, as do all the authorities, that the judgment is erroneous, and in a direct proceeding instituted for the purpose must be vacated. A careful examination of the authorities cited in support of the contention that the judgment is only voidable shows that this view was taken in cases where the judgment was attacked collaterally, and not directly. On the other hand, the following cases sustain the contention that the judgment is void. *Tarleton* v. *Cox,* 45 Miss. 446; *Young* v. *Pickens,* 45 Miss. 556; *Carter* v. *Carriger,* 3 Yerg. 411; 24 Am. Dec. 585; *McCreery* v. *Everdrig,* 44 Cal. 286; *R. R. Co.* v. *Bosworth,* 8 La. Ann. 80; *Norton* v. *Jennson,* 23 La. Ann. 102; *Life Association* v. *Fassett,* 102 Ill. 315–325. On the day the judgment was entered there was no plaintiff, as he was dead, and no attorneys representing him, for the authority of the attorney ceases at the death. Week's Att'ys, § 256, p. 438; *Sanchez* v. *Roach,* 5 Cal. 248; 32 Cal. 500; 35 Cal. 464; 78 Cal. 99. Clearly, the duty of the defendant was, as the action did not abate, under the statute (§ 3187) to make the suggestion to the court and apply for the proper order in the premises. This is said to be the rule in chancery. *Hanington* v. *Becket,* 2 Bach. Chy. 76. The deeds of appointment recited the death of Elliott and the agreement of compromise, and the purchaser being put upon inquiry was bound to take notice of everything affecting his title suggested by the record. 2 Pom. Eq. § 626; *Coal Co.* v. *Doran,* 142 U. S. 437; *La Neve* v. *La Neve,* vol. 2, Leading Cases in Eq. notes.

*Mr. Arthur Brown, Mr. Charles C. Dey* and *Mr. E. B. Critchlow,* for respondents.

Respondents contend that the law exists as follows:

*First.* John Elliott has not asked to enforce this contract. *Second.* No administrator of John Elliott seeks to enforce this contract. *Third.* No one but John Elliott or his immediate representative can enforce it. While the action did not abate. by the death of Elliott, it could not be continued by his personal representatives or successors without. permission of the court. 2 Comp. Laws § 3187. It will be noticed that the language of the statute is permissive and not obligatory, and leave to continue the action may be granted or refused according to the particular circumstances of each case. *Cavanaugh* v. *Scott,* 84 Wis. 93; *Carberry* v. *Ins. Co.,* 86 Wis. 323; *Lyon* v. *Park,* 111 N. Y. 350; *McArthur* v. *Williamson,* 45 Fed. R. 154. From the foregoing well-considered cases the principle seems to be well established that as an application is necessary to authorize a revival or continuance of the action, the court. may, on the ground of inexcusable laches, or when irreparable injury will be suffered, deny the application. The same principle of laches has frequently been affirmed by the highest federal court. ' And the requirement of diligence and good faith is peremptory in cases where mining and other property, ·fluctuating in value, are involved. *Johnson* v. *Mfg. Co.,* 148 U. S. 360–370–1; *Oil Co.* v. *Marbury,* 91 U. S. 587–592; *Caldwell* v. *Kales,* 134 U. S. 126. Where the trial court has exercised its discretion, this court will not reverse the ruling except upon a showing of a clear and undoubted abuse of such discretion. *Henderson* v. *Higgins,* 9 Utah, 290. The judgment was not void, but only voidable. 1 Black on Judg. § 200; Freeman on Judg. (3d ed.) §§ 140–153; *New Orleans* v. *Gaines,* 138 U. S. 395–612. Nor can the judgment be vacated on motion where (as here) the rights of third parties have intervened. *Park* v. *Higbee,* 6 Utah, 414–418. When a judgment is not void upon its face (and counsel for appellant admits that this judgment is not void upon

its face) the court has no power to set it aside on motion unless the motion is made within six months after the term has adjourned, but resort should be had to an action and all the parties interested should be notified and have an opportunity to be heard. *People* v. *Temple,* 103 Cal. 453; *People* v. *Goodhue,* 80 Cal. 199; *People* v. *Harrison,* 84 Cal. 607; *More* v. *Superior Court,* 86 Cal. 495; *Jacks* v. *Baldez,* 97 Cal. 91.

KING, J.:

On the 2d day of May, 1883, Lord Claude Hamilton and John Elliott commenced suit against John Bastian, John Firth, and Arthur Brown, to recover possession of a certain mining property in Juab county, Utah, commonly called the "Copperopolis Mine," and which plaintiffs allege they owned in fee simple and were entitled to the possession of. Plaintiffs further alleged that defendants ousted them therefrom on the 25th day of March, 1883, and have extracted ores from said mine, of the value of $20,000. Defendants' answer contains a specific denial of plaintiffs' averments, and alleges ownership of the property in themselves. No further proceedings were had in the case until some time in 1889, when it appears that a supplemental complaint, which cannot be found, was filed. From the answer to the same, it is apparent that the supplemental complaint alleged the death of Hamilton, one of the plaintiffs, and asked to continue the cause in the name of the surviving plaintiff; and also averred that the American Eagle Mining Company, a corporation, had succeeded to the interest of the defendants, and asked that said corporation be made a party defendant. The American Eagle Mining Company answered and averred that in pursuance of the statute it had made great improvements on the property, and was holding under color of title adversely to the plaintiff's claim, and in good faith. It also pleaded

the statute of limitations. No further steps were taken in court until September 23, 1893, when, upon application of defendants, the case was regularly set for trial on October 3d of the same year. At the time designated for the hearing, defendants appeared. A jury was called, and verdict rendered for defendant. No one represented the plaintiffs at the trial. On November 5, 1894, more than six months after the adjournment of the term at which the trial was had and judgment rendered, Edward Austin and W. F. Tipping served defendants with notice of motion, accompanied with affidavits, to set aside and vacate the judgment, for the reason that at the time the judgment was rendered John Elliott was dead, and no substitution of party plaintiff was had, and the cause was called and submitted without notice and in violation of an agreement of defendants for settlement; and also to substitute said parties as plaintiffs on the ground that they were the duly constituted and appointed trustees for the interests represented by the late Mammoth Copperopolis Mining Company and the late British Tintic Mining Company, and of the share and debenture holders of said companies; and also for leave to file a supplemental complaint.

In Austin's affidavit it was stated that in 1874 the property in question was conveyed to Hamilton and Elliott as trustees, to secure debentures issued by the Mammoth Copperopolis Mining Company, and that later, said company being involved, further debentures were issued, and in 1877 the British Tintic Mining Company was organized to acquire said property and take up the outstanding debentures or claims against the property; that the necessary steps were taken in the English courts, and by proper indentures, to extinguish the debentures and obligations of the first-named company, and to transfer them to the latter, which thereupon issued debentures to discharge said obligations and to revest the legal title to said prop-

erty in said Hamilton and Elliott, to be by them held as trustees for the debenture and stock holders of said last-named corporation; that judgment was obtained in Utah against said company, and the property sold under execution, and purchased by defendants Bastian, Firth, and Brown, and was subsequently by them transferred to the defendant the American Eagle Mining Company; that in 1883 the said British Tintic Mining Company having defaulted in the interest on said debentures, said trustees were required to proceed under said trust and take possession of and sell said property; that notice was thereupon given by said trustees to said company, and thereafter this action was brought to eject defendants from the property in controversy; that in 1884 Hamilton died, leaving Elliott sole trustee, and in April, 1891, Elliott died testate, having appointed his wife executrix; that by the terms of the indenture creating the trust the legal title to the property vested in the executrix of Elliott, and, upon request of the directors of the British Tintic Mining Company, she duly appointed Austin and Tipping trustees, and transferred the title of the property to them; that prior to the demise of Elliott, negotiations had been entered into with the defendants, and a contract signed by the latter and Elliott, by the terms of which all claims against the property both of defendants and the debenture holders and stockholders were to be extinguished; the legal title by deeds and otherwise perfected in Elliott, a new corporation organized under the laws of England which should issue stock to defendants, and also to the debenture holders, and as soon as all obligations were fully discharged, the defendants were to allow judgment in the case in favor of Elliott as trustee, damages for extracting ores being waived, and he was to lease the property to the new company for 99 years for a nominal consideration. That Elliott entered upon the labors necessary to perfect this arrangement, but

died before consummating them; thereafter the stock and debenture holders of the English companies aforesaid continued the labors and were ready and willing to fully carry out the terms of said contract, when defendants broke off said negotiations, and in violation of the agreement procured said judgment; that it was believed that all differences. between the parties would be settled in accordance with said contract, and the application for substitution of the proper parties as plaintiffs was delayed in order to settle the entire matter; that affiant had no notice or knowledge of the judgment until May, 1894, and believes that the other parties in interest, including his cotrustees, were unacquainted with the facts until advised by affiant; that all parties interested, except this affiant and defendants, reside in England, and that the affiant has used reasonable diligence to procure the necessary information in order to make this application.

The affidavit of Van Horn, of the late firm of Baskin & Van Horn, was also submitted, in which it was stated that said firm were attorneys for plaintiff, and that they had no notice or knowledge of the setting of the cause or of the judgment therein, until October 10, 1894. There was also presented an affidavit by the present attorney, showing the diligence used by him in making this application. Defendants filed counter affidavits stating that after said judgment was rendered the property was sold for $55,000, and that since then it had been twice sold, and the vendees had enjoyed peaceable possession thereof, and had expended nearly $40,000 in improvements thereon. The affidavit of one of the defendants denied many of the allegations in Austin's affidavit, and stated that after fruitless negotiations for an amicable settlement affiant wrote Austin that defendants did not care to continue further negotiations for a compromise, and that in August, 1893, Austin knew that there would be no amicable settlement.

The affidavit of the clerk of the court recited that after the case was set for trial plaintiffs' attorneys were immediately notified, and that before the day of hearing affiant's impression was a letter was received from one of the attorneys stating that his firm had no further connection with the cause. Austin filed a rebutting affidavit, denying that he had received the letter claimed to have been written by one of the defendants, or that he had any notice that defendants would proceed to trial. Affiant also stated that the various indentures creating the trust referred to in his first affidavit were duly recorded in Juab county, Utah, and that purchasers of the property knew of the condition of the title to said property. Another affidavit was filed reciting the facts tending to show that the vendees of said property had knowledge of the liens upon said property, and the trust title vested in Elliott and his successors. The trial court refused to set aside and vacate the judgment, and from the order denying the motion this appeal is taken.

We think the only points presented that require consideration are: *First.* Was the judgment rendered in the case void or voidable? *Second.* If voidable only, had the lower court the power to grant the motion and vacate the judgment? *Third.* If it had such power, did appellants invoke the proper remedy? Appellants' contention is that the judgment rendered herein, being against a deceased person, is absolutely void, and that in a direct proceeding such as this, it must be vacated. It is to be observed that there is nothing in the judgment roll or any of the proceedings of the court to indicate the death of the plaintiff Elliott, and not until after the expiration of 13 months from the rendition of the judgment is it assailed. Four terms of court had passed in the meantime, and more than six months had expired after the adjournment of the term at which the judgment was rendered. The

court's attention was not called to the death of Elliott, until said affidavits were filed. Whether a judgment is void when an inspection of the judgment roll reveals the death of one of the parties to the controversy, or a lack of jurisdiction of the person or subject-matter of the action, it is not necessary for us now to determine, although it has been held in California that such a judgment is a nullity, and can be assailed either in a direct or collateral proceeding. But Mr. Freeman announces the rule to be that a judgment obtained upon a record which disclosed the death of one of the parties prior thereto is not void, but only erroneous, and can only be corrected on appeal. 1 Freem. Judgm. § 153. In 1 Rolle. Abr. 746, it is said that, "If in a *cui in vita* the tenant dies, and afterwards judgment is against him which is erroneous, an execution is sued against the heir, he shall not avoid the judgment in assize without error." Again: "So in a *scire facias* by an executor upon a judgment in ejectment. by his testator against B, execution shall not be avoided nor judgment stayed by saying that the tenant died *pendente lite,* for he ought to avoid it by error." Id. 742.

Appellant's counsel, in his very able brief, presents the authorities from which various text writers deduce the rule that judgment given after the death of a party is only voidable, and after an analysis of these decisions counsel declares that such a judgment is in fact void, but, being valid on its face, the rules of law preclude any attempt to make it appear as a nullity and attach inviolability to it against collateral attack. But he says that when directly assailed, either by motion, bill of review, or writ of *coram nobis,* then it must be vacated, because it is void. We are not able to fully concur in this view. It is true that some courts hold that such a judgment is absolutely void, while expressions of others afford ground upon which to predicate this view. We think the better rule to be that when a

court has acquired jurisdiction of the subject-matter and the person during his lifetime, and a hearing is had and judgment rendered, and the judgment roll does not disclose the death of either party to the controversy, then such a judgment is not void because one of the parties may have died prior to its rendition. Such judgment, while erroneous, is not void, and, "While the court ought to cease to exercise its jurisdiction over a party at his death, the neglect to do so does not render such a judgment void; it is voidable when properly assailed." Mr. Freeman announces the rule in these words: "If jurisdiction is obtained over the defendant in his lifetime, a judgment rendered against him subsequently to his death is not void." 1 Freem. Judgm. § 140. A different rule we think would be mischievous and fraught with evil results. A judgment free upon its face from every infirmity ought to possess some degree of sanctity. Especially should this be the rule in those jurisdictions where the statute limits the time within which applications can be made to the court to vacate and set aside judgments rendered therein. We think the weight of authority clearly supports the view herein expressed. 1 Black, Judgm. § 200, and cases cited in note; *Hayes* v. *Shaw,* 20 Minn. 405 (Gil. 355); *Stocking* v. *Hanson,* 22 Minn. 545; *Yople* v. *Titus,* 41 Pa. St. 203; *Coleman* v. *McAnulty,* 16 Mo. 177; *Mitchell* v. *Schoonover,* 16 Or. 216, 17 Pac. 867; *Jennings* v. *Simpson,* 12 Neb. 565, 11 N. W. 880; *McCormick* v. *Paddock,* 20 Neb. 486, 30 N. W. 602; *Ried* v. *Holmes,* 127 Mass. 326; *Tapley* v. *Martin,* 116 Mass. 275; *New Orleans* v. *Gaines' Adm'r,* 138 U. S. 595, 11 Sup. Ct. 428. And this view is strengthened by the statute of this territory which provides that the death or disability of a party to any action or proceeding does not result in its abatement. 2 Comp. Laws, § 3187.

The second and third questions presented are so closely

connected we will not attempt to discuss them separately. Formerly a judgment rendered after the death of one of the parties to the action was assailed by a writ of *coram nobis* or *coram vobis.* Tidd, Prac. 1136; 3 Bl. Comm. 407; Freem. Judgm. §§ 93, 94. But we agree with appellants' counsel that these writs have fallen into desuetude in most of the states, and that the proper way to call the court's attention to a party's death, and to have an erroneous and voidable judgment vacated, is by motion supported by affidavits or otherwise. *Park* v. *Higbe,* 6 Utah, 416, 24 Pac. 524; *Bronson* v. *Schulten,* 104 U. S. 417.

We have no doubt of the power of the court to vacate and set aside an erroneous and voidable judgment such as was rendered in this case, and of the correctness of the procedure adopted by appellants to accomplish this result, but the important question is, was the application made in time? Section 3256 of the Compiled Laws provides that, "The court may likewise in its discretion after notice to the adverse party, allow, upon such terms as may be just, an amendment to any pleading,     *     *     *     and may also, upon such terms as may be just, relieve a party or legal representative from a judgment, order or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect; and when for any reason satisfactory to the court or the judge thereof, the party aggrieved has failed to apply for the relief sought during the term at which such judgment, order, or proceeding complained of was taken, the court or judge thereof in vacation, may grant the relief upon the application made within a reasonable time, not exceeding six months after the adjournment of the term." It is clear that this section controls the power of courts to grant relief against judgments of the character shown in the case at bar, and limits their discretion. It is unnecessary to discuss their power at common law or in the absence of statutory pro-

visions. This section is a part of our civil procedure. It is concerning a matter which is a rightful subject of legislation. Though our courts possess common law and chancery jurisdiction, the Code prescribes limitations beyond which they cannot go. The time within which such relief can be given is six months after the adjournment of the term at which the judgment was rendered. The reason of this statute is obvious. There ought to be some fixed time within which the court can exercise this discretion upon the application of the aggrieved party; and there ought, in the interest of the public, to be some period when persons could purchase property which has been the subject of litigation, and have some assurance that the title, while perhaps vulnerable, could not be assailed upon a motion, and the judgment which had given title be vacated, without making them parties and affording an opportunity to meet the allegations of the moving party upon which the application was based to set aside a solemn and formal judgment.

The theory of the statute is that within the six months mentioned application can be made in an informal manner, by motion, without bringing in the parties who may have acquired an interest in the property subsequent to the judgment, but that after the lapse of six months, if the judgment is assailed and relief sought, then steps which are more formal must be taken. The application is *prima facie* too late, and it was *prima facie* within time when made prior to the six months, and after such delay the court cannot proceed to act in the premises without an opportunity for all persons interested to present regularly an issue and be heard thereon. The moving party must not only make the application, but must set up the facts excusing the delay, and the adverse parties have the right by answer to present an issue for determination. Whether the court would have power to set aside the judgment in

this case after the six months mentioned in the statute if the judgment roll disclosed the death of the plaintiff, we are not called upon to determine, but we think this provision of the statute prohibits the court in a case of this character from vacating the judgment after the expiration of six months from the adjournment of the term at which it was rendered.

It may be asked, is there no possibility of relief in cases similar to the one now under discussion? Of course, it would be improper for us to adjudicate that question at this time, but we feel there is no impropriety in observing that the bill of review so common to chancery practice seems peculiarly fitted to bring before the court all the parties, and to present all the facts connected with the litigation, including those which are explanatory of the judgment and the delay, if there be any, in making the application to have it vacated; and the enforcement of equitable principles, if the facts presented warrant relief, would move the court, and, with the power which it possesses, justice would be done to all the parties.

Appellants' counsel contends that it is unnecessary to remit the parties to another action; that the court where the cause was determined, having chancery jurisdiction, can determine this question as well now as when presented before it in a more formal manner by bill of review. While there is some force in this contention, we think the statute above referred to is decisive of the question. It would seem from the record that interests have been acquired in the property since the judgment, and, as above stated, it is apparent that one of the purposes, if not the chief purpose, of the statute is to protect purchasers of property, and not in a summary and informal manner dispossess them. Appellants' application for relief is in its nature *ex parte,* and after so long a time, in justice and

in reason, the relief demanded ought to be given only upon
a full showing, after sufficient explanation for the delay,
and after all the parties interested in the controversy and
the property in question have had an opportunity to pre-
sent their claims and all the facts to the court.    Section
473 of the Code of Civil Procedure of California is sub-
stantially the same as the section above quoted.    In re-
ferring to the power of the court to vacate the judgment,
the supreme court of California say: "It is provided by
section 473 * * * that the relief which formerly could
be had during the term may be sought within a reasonable
time, which is to be defined to be six months. * * *"
*People* v. *Greene,* 74 Cal. 404, 16 Pac. 197. And the same
court in the case of *People* v. *Temple,* 103 Cal. 453, 37 Pac.
414, construe section 473. It is said: "What is a reason-
able time within which a motion may be made to set aside
a judgment not void upon its face, must depend somewhat
upon the circumstances of each particular case, and is not
definitely determined further than that it will not extend
beyond the limit fixed by section 473 of the Code of Civil
Procedure. When a judgment is not void upon its face,
the court has no power to set it aside on motion, unless
the motion is made within a reasonable time, but resort
should be had to an action, and all the parties interested
should be notified and have an opportunity to be heard."
To the same effect are the cases of *People* v. *Harrison,* 84
Cal. 608, 24 Pac. 311; *Jacks* v. *Baldez,* 97 Cal. 91, 31
Pac. 899; *People* v. *Goodhue,* 80 Cal. 200, 22 Pac. 66.
And it is clear that the reasonable time mentioned is the
six-months limit prescribed by the statute.    "The time
within which such an order could be vacated must be held
to be limited by section 473. * * * The court had no
jurisdiction after the expiration of six months to vacate
the order made on a mere motion for that purpose, the

order not being void on its face." *Moore* v. *Superior Court,* 86 Cal. 496, 25 Pac. 22. We are of the opinion that the lower court has no authority to vacate the judgment rendered in this case upon the application made. The judgment is affirmed, with costs.

MERRITT, C. J., and BARTCH, J., concur.