No. 19,754.

SARAH M. BAIRD BLAIR, *Appellee*, v. MARY C. BLAIR and
FRANCIS P. BLAIR, *Appellants*.

### SYLLABUS BY THE COURT.

ACTION— *To Set Aside Decree of Divorce—Fraud—Publication Service—
Trial Court without Jurisdiction.* In the year 1882 a husband pro-
cured a divorce from his wife by decree of the district court of John-
son county, Kansas, based on publication service. The decree was not
void but was voidable for fraud external to the issues. Afterwards the
plaintiff in the divorce suit married. In the year 1910 he died at his
residence in the state of Missouri leaving a large amount of real and
personal property in that state. No administrator of his estate was
appointed. He was survived by the second wife and one child by her,
who live in the state of Missouri. In the year 1914 the first wife com-
menced an action in the district court of Johnson county, Kansas, to
set aside the decree of divorce. The second wife and her child were
made parties defendant and, after a proper showing, were served with
summons in the state of Missouri. The petition was in form sufficient
either as a petition to vacate a judgment for fraud practiced by the suc-
cessful party, under the code of civil procedure, or as a petition to
nullify the effect of a judgment, under the general equity power of the
court to relieve against fraud. *Held,* the district court of Johnson
county was without jurisdiction to entertain the petition.

Appeal from Johnson district court; JABEZ O. RANKIN,
judge. Opinion filed December 11, 1915. Reversed.

*J. W. Parker,* of Olathe, and *O. L. Haydon,* of West Plains,
Mo., for the appellants.

*John T. Little, C. B. Little,* both of Olathe, and *Fred E. Glea-
son,* of Montpelier, Vt., for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to set aside a decree of di-
vorce on the ground of fraud. A demurrer to the petition on
the ground the court was without jurisdiction was overruled
and the defendants appeal.

The petition was filed in January, 1914, and stated that the
plaintiff, Sarah M. Baird Blair and William Blair were mar-
ried in the state of Vermont in the year 1867. They lived to-
gether in that state for some ten years, when Blair established

a separate residence.   In the year 1879 he went west.   Soon afterwards the plaintiff lost trace of him and received no information of his whereabouts in his lifetime.   In 1882 Blair procured a divorce from the plaintiff on the ground of abandonment, in the district court of Johnson county, Kansas.   The service was by publication and Blair filed an affidavit that he did not know his wife's place of residence and had no means of ascertaining it, the statutory excuse for not mailing her a copy of the petition and of the publication notice.   The present petition charged that the affidavit was false, that the grounds for divorce stated in the divorce petition were false, that Blair had not been a resident of Kansas long enough to entitle him to sue for a divorce in this state, and that in truth he had willfully and without cause deserted and abandoned the plaintiff.   The plaintiff did not learn of the divorce decree until in September, 1913. Sometime after the rendition of the divorce decree Blair married the defendant, Mary C. Blair, by whom he had one child, the defendant, Francis P. Blair.   He died intestate in the year 1910 at West Plains, in Howell county, Missouri, where he resided, leaving a large amount of real and personal property. No administrator of his estate has been appointed.   The prayer of the petition was that the decree of divorce be set aside and that the plaintiff be restored to all rights she had lost by reason of its rendition.   Summons was served on the defendants in Missouri by the sheriff of Howell county after a proper showing of nonresidence and inability to make personal service in this state.

The character of the pleading by means of which the plaintiff invoked an exercise of the jurisdiction of the district court should first be understood.

The form of the petition is such that it is sufficient either as a petition to vacate a judgment for fraud practiced by the successful party, under the code of civil procedure, or as a petition to nullify the effect of a judgment, under the general equity power of the court to relieve against fraud.

It is well settled by previous decisions of this court that the decree of divorce was not void.   All the formalities which the law required to be observed were observed.   A verified petition showing that the plaintiff was a resident in good faith of Johnson county, had been such for more than a year, and

stating a statutory ground for divorce, was filed. A proper showing for service by publication was made and a proper notice was published. A proper affidavit giving reasons for not mailing the petition and publication notice was filed. The prescribed preliminary steps having been taken, the court acquired jurisdiction. All that followed was the exercise of jurisdiction, and the journal entry of judgment discloses that the subsequent proceedings were regular in every particular. It made no difference if the affidavit giving the reason for not mailing a copy of the petition and of the notice were false. (*Larimer v. Knoyle,* 43 Kan. 338, 23 Pac. 487.) Blair was required to allege and prove residence such as the law required. It made no difference if the allegation were false. (*Larimer v. Knoyle,* supra.) Jurisdiction over the subject of divorce, a petition good on its face, and due service by publication gave the court the right to take the evidence and decide the question of residence. If the decision were wrong, it was not void for want of jurisdiction. (*Miller v. Miller,* 89 Kan. 151, 130 Pac. 681.) It made no difference if all the other allegations of the petition were false and were sustained by false testimony. The judgment would still not be void. (*McCormick v. McCormick,* 82 Kan. 31, 107 Pac. 546; *Miller v. Miller,* supra.)

Although not void for want of jurisdiction a decree of divorce may be voidable for fraud. Such a decree may not be avoided, however, for any fraud inherent in the cause of action itself, or because the cause of action was established by false testimony. It can only be avoided for fraud external to the issues, that is, some fraud which prevented a fair submission of the controversy. (*Plaster Co. v. Blue Rapids Township,* 81 Kan. 730, 106 Pac. 1079; *Garrett v. Minard,* 82 Kan. 338, 108 Pac. 80; *Cheever v. Kelly,* ante, p. 269, 150 Pac. 529.) If the plaintiff had received by mail a copy of the divorce petition and a copy of the publication notice informing her of the suit and of the nature of the judgment which would be rendered in case she made default, it may be she would have been able to defeat the action by appearing at the trial and exposing the falsity of some or all of the material allegations of the petition. While the petition in the present case does not so allege, it may be assumed for present pur-

poses that the plaintiff was prevented from doing this because a copy of the divorce petition and of the publication notice were not mailed. If Blair did know his wife's place of residence, or if he had means of ascertaining it, he committed a fraud on her and on the court by not mailing the documents referred to and by filing a false affidavit as an excuse for not doing so. This fraud was external to the issues in the case and was sufficient to vitiate the judgment if made the basis of a proper proceeding to that end.

No specific property of any kind is described in the petition. No possession by the defendants of any property formerly belonging to the deceased is alleged, and the property left by the deceased is described as situated in the state of Missouri, and so not within the jurisdiction of the district court. The antagonism between the plaintiff and the defendants stated in the petition is, in brief, this: The defendants claim to be the widow and child of the deceased by virtue of his second marriage; this marriage was void because the divorce from the plaintiff was procured by fraud; consequently the plaintiff is the widow of the deceased and as such entitled to a portion of his estate.

Such being the character of the plaintiff's petition, what power did the court possess to entertain it?

The court had no power whatever over the marital status which was the subject of the divorce action. That status was in the nature of a *res,* jurisdiction over which was acquired by the commencement of the divorce suit. When Blair died that *res* perished and neither the divorce court nor any other court has power to adjudicate with respect to the utterly nonexistent. The purpose of the divorce suit was to dissolve a status by severing the bonds of matrimony between Blair and his wife. Whatever right Blair had died with him. The cause of action presented in his petition was personal to him and did not survive to his personal representatives or to his heirs. If the judgment of divorce were set aside no marital relation could possibly exist to litigate about because death has effected a severance not dependent upon the variable judgments of courts. It is useless to indulge in fictions or to resort to sophistry. The fact may as well be faced, and the fact is that the marital status involved in the divorce case can not be rescued

or revived and consequently is beyond the jurisdiction of the district court for any purpose.

The foregoing considerations by no means end the matter. A status is not all there is to matrimony, and dissolution of the status by death does not put an end to all that the marriage relation connoted. Certain property rights flow from the relation. This court has held that a husband can not deprive his nonresident wife of her interest in his real estate in Kansas by fraudulently procuring a judgment to be rendered against himself under which he causes the land to be sold and conveyed to one not an innocent purchaser. (*McKelvey v. McKelvey,* 75 Kan. 325, 89 Pac. 663; *McKelvey v. McKelvey,* 79 Kan. 82, 99 Pac. 238.) The same protection should be extended to property rights when they are cut off by fraudulent litigation over the status in which such rights originate as when they are cut off by fraudulent litigation over some other subject. The nature of the particular sham hit upon to effect the result is not important. Consequently, while the marital status as such drops out of consideration in this case, there remains the subject of deprivation of property by means of fraud practiced in obtaining a judgment.

The decisions of courts of other states respecting the subject just discussed are not harmonious. The leading cases are presented in editorial notes found in 57 L. R. A. 583, 1 L. R. A., n. s., 551, and 44 L. R. A., n. s., 505.

Regarding the petition in the light of a bill in equity for relief against fraud the district court of Johnson county was without jurisdiction. The perpetrator of the fraud charged is dead. The action is against persons who are, in a certain sense, beneficiaries of the fraud. Jurisdiction to relieve against fraud is not localized to the place where the fraud was committed nor to the place where evidence of the fraud is registered. From the standpoint of its general equity powers, the district court of Johnson county was obliged to view the divorce decree precisely as if it had been rendered by a court of competent jurisdiction in Missouri or in Vermont. The property which the plaintiff hopes ultimately to reach is in Missouri. The defendants reside in Missouri. Whatever pretensions the defendants make under color of the divorce decree are exhibited in Missouri, and consequently the only redress-

ible injury the plaintiff suffers occurs there. There is no provision of the code of civil procedure which authorizes the plaintiff to choose Johnson county, Kansas, as the forum for the establishment of her rights or which authorizes her to call the defendants into that county by publication, or by the legal equivalent of publication, personal service of summons in Missouri.

Regarding the petition in the light of a petition to vacate a judgment for fraud under the provision of the code of civil procedure, the court was without jurisdiction. Section 596 of the civil code provides that the district court shall have power to vacate its own judgments or orders at or after the term at which they were entered in nine specific instances. The fourth is for fraud practiced by the successful party in obtaining the judgment or order. The method of procedure is in some instances by simple motion and notice. In others, as in the case of fraud, greater formality is required. The applicant is required to file a petition which must conform to certain requirements, and a summons must be issued and served as at the commencement of an action. In some respects the latter proceeding takes the form of a new action and may present equitable aspects. (*The State v. Soffietti*, 90 Kan. 742, 136 Pac. 260.) The proceeding, however, is not an action but is a special proceeding, according to the definitions of the code (§§ 4, 5), and is in no sense a substitute for an equity suit cognizable under the general equity powers of the court. The petitioner is held to a substantial compliance with all the limitations imposed upon the remedy. (*Daniel Hill v. Elias Williams*, 6 Kan. 17; *Sanford v. Weeks*, 50 Kan. 339, 31 Pac. 1088; *Publishing House v. Heyl*, 61 Kan. 634, 60 Pac. 317.) The right of the petitioner is a legal right, and, generally, if the conditions imposed are complied with the judgment assailed must be set aside, while in an equity suit the court may exercise to the fullest extent the broadest chancery powers. The result of the proceeding is not a judgment (Civ. Code, § 393) but, should the petitioner prevail, is merely an order vacating the judgment already entered. The effect of such an order is to restore the parties to the position they occupied when the facts occurred which avoided the judgment. In case of fraud preventing a fair trial, setting aside the judgment

Blair v. Blair.

does not abate the action, none of the proceedings anterior to the trial are affected, the merits of the case are not determined, and the cause simply stands for trial as it did when that stage of the proceedings was originally reached.

Because the marital status which is the subject of an action for divorce is forever removed from the jurisdiction of the court by the death of one of the parties, the parties can not be restored to the position they occupied when the fraud occurred, and the proceedings can not be taken up anew at that point, many well-reasoned cases hold the statutory remedy has no application, after the death of one of the parties to the suit, to a decree of divorce procured by fraud. This court has held that other statutory methods for opening judgments do not apply to divorce decrees. (*Lewis v. Lewis,* 15 Kan. 181.) The Lewis decision is supported by some rather artificial reasoning because the court was appalled at disastrous social consequences which would result from opening a divorce decree, not void but merely voidable, on the faith of which a second marriage has been contracted, children have been brought into the world, and rights of the most delicate nature and interests of the greatest moment have been innocently acquired.

"Such anomalous mischief cannot be engrafted on the practice of our courts, except by clear and explicit legislative enactment." (p. 190.)

In an equitable action for relief on the ground of fraud these consequences may be considered in connection with the inertia of the moving party and other facts and circumstances appealing to the conscience.

If Blair were alive and had not remarried and the conditions of the statutory remedy were complied with, no reason is apparent why it should not be available to the plaintiff. If he were alive and within the time allowed for vacating the judgment he had remarried, there is still no reason why the remedy should not be available. The statute does not make an exception of divorce decrees, or of divorce decrees in case a second marriage occur, and the statute itself is notice of power retained over the decree for a limited time. If the views already expressed be sound, that property rights flowing from the marital status may be recognized and protected although the status itself has been withdrawn from the jurisdiction of the court, Blair's death ought not to prevent the plaintiff from invoking the statutory remedy.

The difficulty with the plaintiff's case is that she waited more than thirty years after the decree of divorce was rendered before she commenced her proceeding to vacate it. The statute allowed her but two years. It reads as follows:

"The district court shall have power to vacate or modify its own judgments or orders at or after the term at which such judgment or order was made. . . . *Fourth*, for fraud, practiced by the successful party, in obtaining the judgment or order.

"Proceedings to vacate or modify a judgment or order for the causes mentioned in subdivisions four, five and seven of the next preceding section must be commenced within two years after the judgment was rendered or order made, unless the party entitled thereto be an infant, or person of unsound mind, and then within two years after removal of such disability." (Civ. Code, §§ 596, 597.)

Section 597 is not a statute of limitation which may be tolled or which does not begin to run until knowledge of fraud. It is a time limitation imposed upon the court's power to act. The language of section 596 is, "the district court shall have power." In order that the court may have the power conferred proceedings "must be commenced" within the designated period. After that, authority to exercise the power granted is at an end. Without the statute power to vacate a judgment merely voidable would end with the expiration of the term at which the judgment was rendered. The statute makes a conditional extension of jurisdiction, the condition being that proceedings to vacate must be commenced within two years. No excuses for not beginning earlier other than those named in the statute can be recognized, and an order to vacate based on proceedings commenced after two years would be *coram non judice* and might be ignored whenever and wherever encountered. The courts have been quite unanimous in interpreting statutes of this character in this way whenever the precise question has been under decision. (*Schwarz v. Oppenheimer, Strauss & Co.*, 90 Ala. 462, 8 South. 36; *People v. Davis*, 143 Cal. 673, 77 Pac. 651; *The People v. District Court*, 33 Colo. 405, 80 Pac. 1065; *The People v. Wells*, 255 Ill. 450, 99 N. E. 606; *Gage Hotel Co. et al. v. Kantoos et al.*, 185 Ill. App. 393; *Young v. Foster*, [Ind. App. 1914] 104 N. E. 769; *Whitbeck v. Railway Co's.*, 21 Mont. 102, 52 Pac. 1098; *Hallowell v. Sloan*, 95 Neb. 1, 144 N. W. 1054; *Cooper v. Cooper*, 107 App. Div. 118, 94 N. Y. Supp. 814;

*Ellis & Gresham v. Ellis,* 92 Tenn. 471, 22 S. W. 1; *Elliott v. Bastian,* 11 Utah, 452, 40 Pac. 713; *State, ex rel. Boyle, v. Superior Court,* 19 Wash. 128, 52 Pac. 1013; *Elder v. Richmond Gold & Silver Min. Co.,* 58 Fed. 536; 23 Cyc. 907.)

The result is the district court was without jurisdiction to entertain the plaintiff's petition, whether it be regarded as addressed to the general equity power of the court or as one to initiate a proceeding under the code.

The judgment of the district court is reversed and the cause is remanded with direction to sustain the demurrer to the petition.