No. 26,281.

JOSEPH H. HULS et al., Heirs, etc., by SAM FREDERICK BORK, their Guardian and Next Friend, *Appellees,* v. GAFFORD LUMBER AND GRAIN COMPANY, SEBASTIAN MARTY and ERIC H. SWENSON, *Appellants.*

### SYLLABUS BY THE COURT.

1. JUDGMENTS—*Equitable Relief—Intrinsic Fraud in Action.* In a special proceeding authorized by the code, section 596 *et seq.,* brought on behalf of minors by their guardian to set aside a judgment rendered against them in a prior action to foreclose a mechanic's lien on their entailed property, in which prior action the minors were represented by a guardian *ad litem,* the record examined and the matters disclosed in the special proceeding and relied on to establish fraud in the foreclosure action and judgment, considered, and *held,* that whatever fraud there was in the earlier action was intrinsic, not extrinsic, and consequently that judgment could only be corrected by appropriate supplemental proceedings in that case—by a motion for a new trial, or by a petition for a new trial, or by an appeal; and *held,* also, that the matters relied on to support an independent action or special proceeding were insufficient to vitiate the judgment in the foreclosure case and the subsequent proceedings and transactions dependent thereon.

2. SAME—*Construction and Operation.* The record of a prior action and judgment attacked in this action on account of fraud, examined, and *held,* that the fraud which inhered therein was intrinsic, not extrinsic, and subject to correction only in the manner prescribed by the civil code and not by an unrelated, independent proceeding; but *held,* also, that the case at bar is one calling for a strict interpretation of the earlier judgment, and applying that principle, the earlier judgment is construed to have adjudicated that the father of the infant plaintiffs owned a half interest in the property involved and that no judgment for any sum was awarded against the infants, and that only the father's adjudged interest in the property was sold, not the alleged and adjudged half interest of the infants; and *held,* that the infants are entitled to have their title to that adjudged half interest in the property quieted against defendants holding under a sheriff's deed based upon a foreclosure sale of their father's adjudged interest in the property.

Appeal from Clay district court; FRED R. SMITH, judge. Opinion filed February 6, 1926. Modified in part and reversed in part.

*E. C. Sweet,* of Minneapolis, *W. T. Roche* and *George L. Davis,* both of Clay Center, for the appellants.

*C. Vincent Jones,* of Clay Center, for the appellees.

Infants, 31 C. J. p. 1172 n. 27, 28, 32.  Judgments, 34 C. J. pp. 321 n. 86, 451 n. 18, 465 n. 78, 470 n. 44, 502 n. 15, 769 n. 12, 901 n. 87; 15 R. C. L. 762.

The opinion of the court was delivered by

DAWSON, J.: This was an action or special proceeding in the district court of Clay county to set aside a judgment and to nullify all proceedings and transactions dependent thereon, which judgment had theretofore been rendered in a prior action to foreclose a materialman's lien on a Clay county farm.

The facts must be stated at some length: On July 13, 1915, one F. A. Butler and wife conveyed a quarter section of land (SW ¼ sec. 22, twp. 9 south, range 1 east of the 6th P. M.) to grantees thus designated: "Hattie L. Huls and heirs of her body and assigns."

The consideration for the deed was thus specified: "In consideration of the sum of one dollar in cash and other considerations hereinafter mentioned, to them duly paid."

Further down in the body of the deed were this condition and inhibition:

"Here is the consideration above mentioned. The parties of the second part are not to mortgage or sell the above described property for twenty years."

Hattie L. Huls was the daughter of the grantors. She was the wife of Hugh B. Huls and mother of the minors appearing as plaintiffs by their guardian and next friend in this lawsuit.

After the execution and delivery of the deed above mentioned, at sometime prior to November 20, 1917, Hattie L. Huls died intestate. Hugh B. Huls then married Viola Jamison, daughter of Sebastian Marty.

Late in 1917 and during the first six months of 1918, the Gafford Lumber and Grain Company, of Oak Hill, furnished lumber and materials to the value of $1,368 for the erection of a dwelling house upon the land above described. These materials were purchased and charged to Hugh B. Huls on open account, for which he eventually gave his promissory note and paid $275 thereon. On October 23, 1918, the lumber company filed its verified statement with the clerk of the district court to perfect its lien on the land upon which the improvement was constructed. Thereafter, on October 28, 1919, the lumber company commenced an action against Hugh B. Huls and his second wife, Viola, and his minor children to foreclose its pretended materialman's lien on the quarter section concerned. The petition alleged certain pertinent facts, including the following:

"That . . . up to the time of her death, Hattie L. Huls, the former wife of the said defendant Hugh B. Huls and the mother of each and all of the said above named minor defendants, was the owner of the fee simple title in and to the [land described]; that the said Hattie L. Huls died intestate prior to November 20, 1917, leaving as her heirs at law her said husband, Hugh B. Huls, and her five minor children, who are the minor defendants named in the title of this action; that said Hattie L. Huls left no other heirs. . . .

"That . . . commencing on or about the 20th day of November, 1917, the said Hugh B. Huls as the owner of an undivided one-half interest in and to the said above described real estate and as the agent for said minor children who owned the remaining one-half undivided interest in and to the said hereinbefore described real estate, contracted and agreed to and with the said plaintiff who was then and now engaged in the business of selling lumber and building materials at Oak Hill, Kansas, for certain lumber and building materials for the construction of a frame dwelling house upon the said above described real estate, which lumber and building materials were used in the building and construction of a dwelling house upon the said real estate hereinbefore specifically described."

Sometime later a guardian *ad litem* was appointed for the minor defendants. The attorney for the plaintiff prepared an answer in the form of a general denial for the guardian *ad litem* to sign, which the latter did, upon the assurance of plaintiff's attorney that the matter was merely formal, that the action was of no unusual sort, and that a general denial was all that was necessary. This answer was filed on December 10, 1919.

Thereafter, according to the judgment record of the Clay county district court, on December 29, 1919, this cause came on for trial—

"The said plaintiff, Gafford Lumber and Grain Company, a corporation, appearing by . . . its attorney of record, and each and all of the above named minor defendants appearing by . . . [a guardian *ad litem*] heretofore by the judge of this court duly appointed as such . . . for each and all of the said above named minors. ., . .

"Thereupon the said cause proceeds to trial upon the petition filed in said action by the said plaintiff and the answer of the said guardian *ad litem*, . . .

"The court, after hearing and duly considering the evidence adduced by the said parties so appearing and the arguments of counsel thereon does find: . . . that said [guardian *ad litem*] an attorney at law duly admitted and licensed to practice law in the state of Kansas, has heretofore by the judge of this court at chambers, been duly appointed as guardian *ad litem* for each and all of the minor defendants herein and that he has filed answer for each and all of such minor defendants as provided by law; . . . that each and all of the allegations contained in plaintiff's said petition are true; that there is now due, owing and unpaid to said plaintiff from the said defendant, Hugh B. Huls, upon the cause of action set out in plaintiff's petition the sum of twelve hundred and two dollars and thirty cents ($1,202.30); . . . that the

said plaintiff is entitled to a first lien upon the following described real estate in Clay county, Kansas, by virtue of its mechanic's or materialman's lien sued upon herein; . . . and that plaintiff is entitled to have said real estate above described sold to pay the said indebtedness, interest, taxes and costs of suit."

Judgment for $1,202.30 was entered accordingly, and foreclosure decreed. The land was sold by the sheriff to the Gafford Lumber and Grain Company on November 16, 1920, and the trial court confirmed the sale. On May 17, 1922, the sheriff executed a deed to the premises in favor of Sebastian Marty, father-in-law of Hugh B. Huls, who in the meantime, on November 22, 1920, had acquired by assignment the certificate of purchase theretofore granted to the Gafford Lumber and Grain Company.

On September 1, 1922, Sebastian Marty executed two mortgages on the property for $4,000 and $400 respectively to Eric H. Swenson, a local mortgage broker, representative of certain loan companies which had theretofore declined to loan money on the property because of the condition of the title.

On January 3, 1923, the present proceedings were begun on behalf of the minor children of Hattie L. Huls, "heirs of her body" and tenants of the entailed estate created in their behalf by their grandparents, F. A. Butler and wife, by deed of July 13, 1915. Their petition recited the facts narrated above, set up the deed executed by their grandparents under which they held the property, and set up as exhibits the entire record of the case of the Gafford Lumber and Grain Company versus Hugh B. Huls, Viola Huls, their stepmother, and against these minor plaintiffs, in which their entailed property was improperly subjected to a materialman's lien and to foreclosure, sale, and conveyance by sheriff's deed to Sebastian Marty. The petition further alleged that at the time the Gafford Lumber and Grain Company commenced its action to foreclose its materialman's lien, it had notice and knowledge of the terms of the deed from Butler and wife to Hattie and the heirs of her body; that its attorney had been attorney for Eric H. Swenson, and they both had timely notice and knowledge of the deed and its terms; that Sebastian Marty had timely notice and knowledge of the deed and its terms; that . . . attorney for plaintiff, the Gafford Lumber and Grain Company, prepared the answer for the guardian *ad litem,* and—

"Wrongfully represented and stated to said guardian *ad litem* that it was a case where the answer of the guardian *ad litem* was a mere formal matter,

and that said Hattie L. Huls had died intestate, the owner in fee simple of said real estate, and that said Hugh B. Huls, a defendant therein, and these minors were her heirs at law, inheriting said real estate, and thereby induced said guardian *ad litem* to make no independent investigation, and wrongfully withheld from the said guardian *ad litem,* and from the trial court all information as to the said deed from the said F. A. Butler and Mary L. Butler to said Hattie L. Huls, and of the terms and conditions of said deed, and thereby misled and deceived and perpetrated a fraud upon the said guardian *ad litem,* the court and these plaintiffs. That had it not been for such misrepresentation and wrongful conduct aforesaid, said guardian *ad litem* could and would have called the deed and the terms and conditions of said deed to the attention of the court and could have and would have saved said land for plaintiffs, which land was then and has ever since been worth more than $9,000, and could and would have prevented this fraud from being perpetrated on the said guardian *ad litem,* the court and these plaintiffs. . . .

"And neither did said guardian *ad litem* discover same until said court had adjourned for the term. That had the said guardian *ad litem* known or discovered the terms of said deed, he could and would have called same to the attention of the court and caused the judgment to be set aside as to these plaintiffs. That each and all defendants herein .. . . . knew . . . of the rights of these plaintiffs in said land, and knew these plaintiffs were minors and had no guardian of their estates, and no one authorized to act for them, and knew they were not indebted to the Gafford Lumber and Grain Company, and that Hugh Huls had no authority to represent them as their agent or otherwise in the purchase of lumber. That the filing of said case No. 6003, and every step taken therein and every conveyance of any kind since then was and is fraudulent and void as against these plaintiffs."

Plaintiffs prayed that all the proceedings in the prior case be adjudged to be void, the sheriff's deed canceled, and their title quieted and for other appropriate relief.

Defendants filed a general demurrer to this petition, which was overruled. Defendants then answered, traversing all plaintiffs' allegations, but admitting the accuracy of the proceedings of the earlier case set up as exhibits attached to plaintiffs' petition, and specifically denying any fraudulent intent in any of the proceedings set forth in plaintiffs' petition.

Trial by the court; evidence for plaintiffs and defendants presented; general finding "on all the issues in favor of plaintiffs and against the defendants"; judgment for plaintiffs as prayed for; defendants appeal.

This present action was essentially one for relief on the ground of fraud. Some pertinent provisions of the code governing this special sort of proceedings read:

"60-3007. The district court shall have power to vacate or modify its own

judgments or orders, at or after the term at which such judgments or order was made: . . .

"Fourth. For fraud, practiced by the successful party, in obtaining the judgment or order. . . .

"Eighth. For errors in a judgment, shown by an infant in twelve months after arriving at full age. . . . (Civ. Code, § 596.)

"60-3008. Proceedings to vacate or modify a judgment or order for the causes mentioned in subdivisions four, . . . of the next preceding section must be commenced within two years after the judgment was rendered or order made, unless the party entitled thereto be an infant, or person of unsound mind, and then within two years after removal of such disability. . . . (Civ. Code, § 597.)

"60-3011. The proceedings to vacate or modify the judgment or order on the grounds mentioned in subdivisions four . . . eight . . . of section 596 shall be by petition verified by affidavit, setting forth the judgment or order, the grounds to vacate or modify it, and the defense to the action, if the party applying was defendant. On such petition a summons shall issue and be served as in the commencement of an action. . . ." (Civ. Code, § 600.)

There was no want of evidence to establish the fraud of the prevailing party in the mechanic's lien case—fraud demonstrated by the record of that case, and by the oral testimony adduced in this case. It is quite apparent that before the foreclosure proceedings were instituted, the lumber company knew that its debtor, Hugh B. Huls, owned no interest in the estate tail created by Butler and wife in favor of their daughter and the heirs of her body. The lumber company constructively knew it because the deed was of record (*Foy v. Greenwade*, 111 Kan. 111, and citations, 206 Pac. 332), and the manager of the lumber company was so informed by Huls. Its attorney testified and admitted that he knew the contents of the Butler deed, and he made no pretense that he had examined the Kansas law touching that character of conveyances. Indeed, he admitted that he did not examine the law of this state, but did find a law book which declared that under an Indiana statute of 1852 estates tail in that state were transformed and thereafter adjudged to be estates in fee simple. It was also shown convincingly that Sebastian Marty, assignee of the lumber company's certificate of purchase and grantee of the sheriff's deed, and Eric H. Swenson, before they acquired any interest in the property, knew, constructively and actually, that the property belonged exclusively to these minor plaintiffs, and that no proceedings *in invitum* could deprive them of it. So this court has no trouble in discovering sufficient evidence to support the trial court's finding of fraud. But that is not enough.

Fraud involved in judicial proceedings is or may be of two kinds—intrinsic and extrinsic. And if the fraud which has crept into judicial proceedings is intrinsic, it must be corrected, if at all, by a motion for a new trial filed within three days after the judgment tainted with such fraud is rendered (Civ. Code, § 306) or by a petition for a new trial, if applicable, filed not later than the second term after the discovery of the fraud (Civ. Code, § 308). Whether such new trial is invoked by motion or by petition, such proceedings are supplemental to those of the original action and must be undertaken in that identical case. If the fraud or other miscarriage of justice complained of is intrinsic, the court's jurisdiction to correct it is not otherwise invocable. (*Plaster Co. v. Blue Rapids Township*, 81 Kan. 730, 735, 106 Pac. 1079; *McCormick v. McCormick*, 82 Kan. 31, 36-38, 107 Pac. 546; *Garrett v. Minard*, 82 Kan. 338, 108 Pac. 80; *Blair v. Blair*, 96 Kan. 757, 759-760, 153 Pac. 544; *United States v. Throckmorton*, 98 U. S. 61, 25 L. Ed. 93 and Rose's Notes thereto at p. 512 *et seq.*; 1 Black on Judgments, 2d ed., § 292.)

If, however, the fraud was extrinsic to the issues, it may be subjected to a direct attack in an independent action or special proceeding brought for that purpose. (*Blair v. Blair*, supra, 762 *et seq.*; *Leslie v. Manufacturing Co.*, 102 Kan. 159, 169 Pac. 193; *James v. Young*, 111 Kan. 310, and citations, 206 Pac. 905.) But the difficulty in upholding the present judgment on the theory of fraud in the preceding action lies in the fact that the matters in that case which might properly be designated as fraudulent were intrinsic. The issues of fact were whether or not the lumber company had a valid claim for lumber and what was the exact amount due; whether Huls, and his infant children through his agency, had contracted the debt; whether the lumber had been devoted to the improvement. of the property concerned. Some mixed questions of law and fact were whether the materialman's lien had been timely and duly perfected, and whether the property sought to be subjected to the lien and sold in foreclosure to pay it was the property of Huls and his minor children. These were the issues of fact and of law and mixed questions of law and of fact involved in that lawsuit. One pure question of law necessarily involved in that lawsuit was whether the property of infants could be subjected to a materialman's lien under the facts of that case. (14 R. C. L. 226.) One specific issue of fact so raised and traversed was whether Hugh B. Huls had a half interest in this property, and the journal entry of judgment

recites that the trial court made a general finding that all the allegations of plaintiff's petition were true, and found specifically that Hugh B. Huls was indebted to the lumber company in the sum of $1,202.30, and that plaintiff's mechanic's lien on the property should be foreclosed and the property sold to satisfy it. It is unavailing that the judgment was erroneous. Not being corrected by supplemental proceedings or by appeal, it became *res judicata*. In *Whiteman v. Cornwell*, 100 Kan. 234, 164 Pac. 280, it was said:

"It is also contended that one cannot quiet his title if he has no title. He cannot if his adversary having some sort of title sees fit to contest with him. But if the latter foregoes a contest, shall not the plaintiff prevail? If I am sued for a sum of money which I do not owe, on a claim without even a shadow for its basis, and am duly summoned into court, and I wholly ignore the judicial proceeding, the plaintiff will take judgment against me by default, and in time that judgment will become unassailable. Certainly I will then be indebted to the person who secured judgment against me, and there will be no escape from it." (p. 236.)

The fraud perpetrated by the lumber company and its privies to subject the plaintiff infants' property to the payment of their father's debt was involved in that lawsuit from first to last. It inhered in it. The fraud was intrinsic. Consequently that fraud could form no basis for this independent action or special proceeding. It seems impossible to discern any *extrinsic* act, fact, or circumstance which caused justice to miscarry in the lumber company's case. There was, indeed, a matter which transpired in connection with that action and which was extrinsic in its nature, not involved in the issues, and which the first judgment did not irrevocably conclude. That was the incident involved in the conversation between plaintiff's attorney and the guardian *ad litem* and in the preparation of the defendants' answer and general denial by plaintiff's attorney, and in its signing and filing by the guardian *ad litem*, and in his subsequent failure to give the case further attention on the assurance of plaintiff's attorney that the action was of the usual sort. That was an extrinsic matter not involved in nor concluded by the judgment. But what was there about that incident that was fraudulent? The young attorney, but recently admitted to practice and but shortly released from the army, should have made a more thorough investigation of the matters in issue. But his failure to do so did not constitute a fraud practiced by the prevailing party, the lumber company. (*Welch v. Challen*, 31 Kan. 696, 3 Pac. 314; *Wilson v. Jones*, 107 Kan. 365, 191 Pac. 580; 34 C. J. 465, 466.) The lumber com-

pany did not prevent the guardian *ad litem* from a more zealous discharge of his duty. Nor was this extrinsic incident sufficient to justify the setting aside of the judgment otherwise than by timely motion or petition for a new trial. (*Gooden v. Lewis*, 101 Kan. 482, 167 Pac. 1133; 1 Black on Judgments, 2d. ed., § 341.) An infant appearing in court by a guardian *ad litem* is bound by a judgment precisely as an adult is bound, and he cannot assail that judgment except on the same grounds on which it might be assailed by any other party to the litigation. (*Burke v. Northern Pac. R. Co.*, 86 Wash. 37, Ann. Cas. 1917B, 919 and note.)

Can the conduct of the lumber company's attorney be properly characterized as extrinsic fraud? To bring a groundless and unjust suit is a species of fraud, of course, but it is the very opposite of extrinsic fraud. But it is neither fraudulent nor unusual for the attorney for plaintiff, where the adverse parties are minors, to prepare an answer in the nature of a general denial to be signed and filed by the person appointed as guardian *ad litem*. And it is difficult to pronounce it fraudulent for plaintiff's attorney to assure the guardian *ad litem* that the case was of the usual sort where a guardian *ad litem* had to be appointed. In 1 Black on Judgments, 2d ed., § 369, it is said:

"A party to an action at law must not be too credulous, nor rely too easily upon mere suggestions or representations made to him by his adversary. Though the conduct of his opponent may have been tricky or evasive, it is his own duty to be careful and vigilant, and he cannot obtain relief in equity on this ground, unless he shows that he is free from the charge of negligence or lack of due attention to his case."

In what way was the case unusual? In what was it fundamentally different from any other case where infants have to be represented by a guardian *ad litem?* As the action was one involving the interests of infants, the plaintiff had to prove its cause step by step just the same as if a wary and astute lawyer and adverse litigant on the other side were watching for every weak point in their adversary's lawsuit. But that is true in all cases involving the interests of infant defendants. (1 Black on Judgments, 2d. ed., § 197.) We cannot assume that the foreclosure action was conducted in any other fashion, and if the trial court gave a wrong judgment, as it obviously did (*Allen v. Pedder*, 119 Kan. 773 and citations, 241 Pac. 696), that judgment should have been challenged by a motion for a new trial, by petition for a new trial, or by an appeal. Ap-

pellees press upon our attention the cases of *Daleschal v. Geiser, Guardian,* 36 Kan. 374, 13 Pac. 595, and *Craig v. Craig,* 110 Kan. 13, 202 Pac. 594, but the frauds perpetrated in those cases, whether extrinsic or intrinsic, were corrected in supplementary proceedings in the same actions in which the frauds arose, not in an unrelated and independent proceeding such as appellees seek to maintain in the case under present consideration.

This court feels bound to hold that the matters which plaintiffs relied upon in this action to nullify the earlier judgment and proceedings based thereon were intrinsically involved in that action; they were conclusively settled thereby; they are *res judicata;* and no sufficient showing of extrinsic fraud is made to justify their nullification in an independent action or special proceeding such as that here presented for our review.

It is needless to say that this court regrets the conclusion which necessarily results from what is said above. It is deplorable that the natural solicitude of grandparents in placing reasonable restrictions upon the alienation of this property should be circumvented by such maneuvers as have been directed against the property of these infants. Whether the grandparents who erected and entailed this estate for the benefit of the heirs of their daughter's body, or the personal representatives of the grandparents, have any redress cannot be determined in this lawsuit. (See *Rooks Creek Church v. First Church,* 290 Ill. 133, 7 A. L. R. 1422 and note; *Wallace, etc., v. Smith,* 113 Ky. 263, and citations; Rose's Notes to *Cowell v. Colorado Springs Co.,* [U. S.] 25 L. Ed. 547, at page 836; Note to *Latimer v. Waddell,* [Wis.] 3 L. R. A., n. s., 668 672 *et seq.;* 12 C. J. 398 *et seq.;* 8 R. C. L. 1097 *et seq.*)

However, a critical analysis of the judgment in the lumber company's case does permit this court to hold that the trial court's judgment in the instant case is not altogether erroneous. While we find no evidence of extrinsic fraud whereby the judgment in the lumber company's case can be overborne and demolished, that judgment, strictly construed—and the hapless plight of these infant plaintiffs furnishes an imperious demand for such construction— did not go so far as a superficial interpretation of its terms would imply. While the judgment recited general findings in favor of the lumber company and against the defendants, finding that Hugh B. Huls owned a half interest in the property and the infants owned the other half, etc., yet in determining the amount of the indebted-

ness, and from whom it was due, the court was specific and the judgment was that Hugh B. Huls was indebted to the lumber company in the sum of $1,202.30. There was no judgment for any sum whatever against the minors, and surely it was the adjudicated interest of Huls, not the infants' adjudicated interest in the property, which was ordered to be foreclosed and sold to satisfy the adjudged indebtedness of $1,202.30 against Hugh B. Huls. And this is all that was sold, and that is all that was bought at the foreclosure sale, and that is all the defendants can lay any legitimate claim to—the undivided one-half interest which the trial court adjudged to be owned by Hugh B. Huls in the lumber company's case.

It follows that the judgment of the district court must be modified so as to quiet the title of the plaintiff infants in an undivided half of the land in controversy, and in other respects the judgment is reversed, with instructions to quiet the title of defendants in an undivided half of the property against these plaintiffs; but nothing determined in this action is to be construed to the prejudice of any redress which law or equity may afford the grantors of this entailed estate or their personal representatives.

Modified in part, and reversed in part.

BURCH, J. (dissenting): I think the judgment of the district court should be affirmed. Extrinsic fraud includes conduct of the prevailing party which prevents fair submission of the controversy. (*Garrett v. Minard*, 82 Kan. 338, 108 Pac. 80.) Intrinsic fraud is fraud pertaining to determination of the controversy. In this instance, the court finds in effect that, by inducing the guardian *ad litem* to play a purely formal part, the lumber company forestalled an answer stating the facts which it knew would be fatal to its lien, and consequently the minors' interests were never in fact brought to its attention. Minors must act in a lawsuit through the means the law provides—a guardian *ad litem*—and when the adverse party deprives them of the kind of representation the law contemplates, I am inclined to think the fraud may be regarded as extrinsic, and as affecting the result.

MASON and HARVEY, JJ., are of opinion the judgment should be reversed in its entirety.