## NIDAY et al. v. GRAEF.

(Circuit Court of Appeals, Ninth Circuit. March 27, 1922. Rehearing Denied May 8, 1922.)

### No. 3764.

1. **Deeds ⊜⟼72(4)—Deed to person in fiduciary relation held invalid.**

   A conveyance by a man 80 years old, whose mental and physical condition had been greatly weakened by age and illness, of all his remaining property to defendant, who was his son-in-law and also his close and trusted friend and legal adviser, *held* invalid, where the only consideration claimed was legal services previously rendered by defendant, for which no charge had been or was intended to be made.

2. **Cancellation of instruments ⊜⟼34(1)—Mere delay for two years before bringing suit for cancellation of deed held not laches.**

   Mere delay by heirs for two years after the death of their father before commencing suit for cancellation of a deed made by him on the ground of undue influence *held* not to constitute laches which would bar relief.

3. **Cancellation of instruments ⊜⟼58—On cancellation of deed grantor held accountable for profit made on resale of property.**

   On cancellation of a deed for undue influence, where the grantee had sold the property to purchasers in good faith, and it was agreed that title might be quieted in them, complainant *held* entitled to receive her share of any profit made by defendant grantee from the sale.

4. **Cancellation of instruments ⊜⟼59—Grantee in deed obtained through undue influence held not entitled to pay for services in looking after the property.**

   .Where a deed was canceled as having been obtained through undue influence, the grantee *held* not entitled to pay for supervising the property while in his possession, nor to a commission for effecting its sale to third parties.

5. **Costs ⊜⟼172, 193—Successful complainant held entitled to counsel fees, but not to expenses.**

   A successful complainant in a suit for cancellation of a deed *held* entitled to an allowance of counsel fees, but not entitled to recover expenses other than statutory costs.

Appeal from the District Court of the United States for the Southern Division of the District of Idaho; Frank S. Dietrich, J.

Suit in equity by Julia Green Graef against J. L. Niday and others. Decree for complainant, and both parties appeal. Modified and affirmed.

Alfred A. Fraser, of Boise, Idaho, for appellants and cross-appellees.

Hugh Montgomery and Platt & Platt, Montgomery & Fales, all of Portland, Or., for appellee and cross-appellant.

Before ROSS, MORROW, and HUNT, Circuit Judges.

HUNT, Circuit Judge. This suit was brought by Mrs. Julia Graef to set aside two deeds of land made in 1914 and 1915, respectively, by R. E. Green, who died in March, 1917, to J. L. Niday, the husband of Mrs. Niday, a sister of Julia Graef. The essence of the complaint is that Mr. Niday obtained the deeds in an improper manner, and that Mr. Green, who was the father of Mrs. Niday and Mrs. Graef, executed the deeds while under Niday's influence. Defendants Niday and wife admitted the conveyances, but denied all allegations of improper

conduct, and alleged that the property had been sold by them to certain other defendants, Buell and wife and A. L. Green. The last-named defendants answered that they were innocent purchasers.

From a decision in favor of Mrs. Graef the defendants have appealed. After a decree by order of the District Court accounting was had, and, as Mrs. Graef excepted to certain allowances, she filed a cross-appeal.

[1] We gather these facts from the evidence: When Mr. Green conveyed the property he was about 80 years old and had previously parted with all his other properties. Mr. Niday was a lawyer at Boise, and for years enjoyed intimate, personal, and professional relations with Mr. Green, and held his entire confidence. Mr. Green lived on the ranch Greenhurst from 1900 until 1914. Mrs. Green died in 1909, and soon thereafter Mr. Green commenced to fail in health and mental strength. In 1914, hoping Mr. Green's health would be improved, Mr. and Mrs. Niday moved him to Boise, where, in order to give him proper care, his sister-in-law, Mrs. Wager, went to live with him. Witnesses said that Mr. Green had greatly changed in the later years of his life, that he was nervous and depressed, and was unable to collect his faculties and did not finish sentences, that at times he failed to recognize members of his family, and would often sit listlessly and seemed greatly worried over his financial condition. One of his daughters testified that he grieved over his inability to support her, and expressed himself as poverty-stricken, "living upon the bounty of Mr. and Mrs. Niday."

The first deed to Mr. Niday was for six acres. It was executed December 22, 1914, but was not recorded until February 19, 1916. The other deed was for 206 acres, dated October 1, 1915, but was not filed for record until May 27, 1916. Mr. Niday testified that in 1914 there were mortgages on the ranch, and that the notes bore accumulated interest; that Mr. Green consulted him, and that adjustments were made by which Mr. Green parted with title to certain other lands, but retained the property known as the Greenhurst ranch, here involved, which was also mortgaged; that at one time Mr. Green brought up the matter of the payment of the mortgages and said that he (Niday) had been attending to business for him and his family for years and had never been paid, and that he would like him to have the ranch; that with some reluctance he accepted the deed subject to the mortgages against the land; that afterwards he paid the mortgages, amounting to more than $12,000; and that $15,000 was the reasonable value of the ranch in 1915. Referring to the deed of the six-acre tract, Mr. Niday said that after the incumbrance upon it was dismissed Mr. Green told him that he would like him to take it, saying, "You can put up money for my use;" that he accepted the deed; that the value of the professional services which he had rendered to Mr. Green during the years between 1896 and up to the time of the disposition of the property was from $3,000 to $4,000; that he had never presented a bill or made up an itemized statement; and that Mr. Green proposed to convey the property in payment of the debt. Mr. Niday said that he withheld the deeds from record because he wished to obtain a loan from the state land board of Idaho; but that, inasmuch as he had bor-

rowed $5,000 from that board, and as no one person could borrow more than that amount from the board, he withheld the deed and asked his father-in-law, Mr. Green, to apply to the state authorities for a loan of $5,000, but that loan was denied.

The whole record shows that Mr. Niday had great influence over Mr. Green. For instance, it is significant that in 1914 Mr. Green wrote an "abusive" letter to Mr. Moore, an old friend, and thereafter called upon the friend and apologized for having written it, saying Mr. Niday. had made him sign it. It is a circumstance, too, that about 10 days before the death of Mr. Green, which occurred in March, 1917, Mr. Niday endeavored to arouse him in order to sign a paper. These matters become damaging to the attitude of Mr. Niday when it is recalled that not until after Mr. Green's death did he inform Mrs. Graef and Mrs. Acuff, another daughter, and one of Mr. Green's sons, that their father had conveyed all his property to him. Mrs. Niday doubtless knew of the transaction, as did two sons, Jack and James, who, after the father's death, conveyed their interests in the property involved to Mr. Niday. Mrs. Graef, however, did not know of the existence of the deeds until more than a year after Mr. Green's death. She corresponded with Mr. Niday and asked for an explanation, and, although there was some suggestion of a settlement, none was had, and in December, 1918, Mr. Niday sold the property for a consideration of $30,-000. Suit was thereafter instituted by two sisters and a brother, but Mrs. Graef, who resided in Oregon, bought the interests of her co-plaintiffs, dismissed the action, and then brought suit in the federal court.

The view of the district court was that the minimum value of the property at the time of the transfers was $15,000; that when the transfers were made Mr. Green was in his "second childhood"; that it was never the intention of Mr. Niday to make a charge for services against Mr. Green; that after the delivery of the deeds Mr. Green was helpless and penniless; that Mr. Green had implicit faith in Mr. Niday, who was his adviser and close friend; that Mr. Niday protected him in dealing with third persons, but that in dealing with Niday Mr. Green was unaided and alone; that no theory or explanation of the transaction had been made upon which the transfers could be sustained.

By every approved rule Mr. Niday held a fiduciary relationship toward Mr. Green, and was required to show that the transactions complained of were entirely fair, made in the very best faith, and that Mr. Green executed the deeds voluntarily with full knowledge of the whole situation. Living as did Mr. Niday in close family relationship with Mr. Green, as a trusted counselor and confidential friend, the confidence reposed should have been faithfully acted upon and kept far from any intermixture of imposition. Having occupied a situation where he could derive an advantage to himself against Mr. Green, whose mind and physical condition were greatly weakened by age and illness, equity will not permit him to hold the advantage taken and will decree as the merits warrant. Harding v. Handy, 11 Wheat. 103, 6 L. Ed. 429.

[2] We agree with the District Court that the appellant cannot successfully rely on the doctrine of laches. It was not until April, 1918, that Mrs. Graef first learned of the existence of the deeds to Mr. Niday, and in January, 1919, litigation was commenced in the state court of Idaho. Clearly the defense of laches ought not to be sustained as against her. The brother and sister who subsequently assigned their interests to Mrs. Graef, and who were original coplaintiffs with her, knew of the existence of the deeds within a short time after the death of Mr. Green; but the circumstances were not such as to make their delay unreasonable. As pointed out by the learned judge of the District Court, the case is not one where one of the parties has permitted another to take all the chances of an enterprise, and then, after success has come, demands a portion of the profits where he has been unwilling to share the risks. When the two original coplaintiffs who assigned to Mrs. Graef learned of the existence of the deeds, Mr. Niday did not offer to put them on an equality with him. If he had done so, and they had failed to avail themselves of the offer, the argument invoking the doctrine of laches would have force; but under the circumstances of the instant case it has not. Southern Pacific Co. v. Bogert, 250 U. S. 483, 39 Sup. Ct. 533, 63 L. Ed. 1099.

[3] Passing now to the matters in the accounting as presented by the cross-appeal: Mrs. Graef, through her counsel, having agreed that, if a decree should be entered in her favor, title might be quieted in the purchasers of the property, Mr. Niday is to be held as a trustee for the benefit of Mrs. Graef to the extent of the interests represented by her.

It therefore became the duty of Mr. Niday to account to her for any profit which he made out of the sale. Niday had a right to buy the interests of the heirs who sold to him, and it was not necessary for him to account to Mrs. Graef for such purchase. But he should account to her for any profit he made out of the sale of the property to the purchasers, conceded to have bought in good faith, and she should recover her share thereof and the shares of those whose interests she bought. The exceptions to the rulings which excluded such profits are well taken.

Mrs. Graef complains of the action of the court in allowing Niday $900 found to have been paid to Mr. Green in connection with the conveyance of the six acres included in the deed of December 22, 1914. The court held that the $900 was the proportionate value of the six acres to the 212, adopting as a basis a value of $150 per acre, and evidently accepting Niday's testimony that when the deed for the six-acre tract was executed Mr. Green said he would need all the money and more, and that he would like to deed the six acres to Niday and he could "put up money" for his use. Inasmuch as Niday did expend more than the sum of $900 toward the maintenance and care of Mr. Green, we think it was equitable to allow him credit in that sum.

[4] The court also allowed Mr. Niday $900 for personal services in supervising the property in controversy during the time he held it. But, as we look at it, Mr. Niday having come into possession improperly, he should not be allowed money for supervising beyond that which

he necessarily expended in the care and custody, together with interest on such expended sums.

The court also allowed Niday $1,500 commission for effecting a sale to the bona fide purchasers, and charged one-half to Mrs. Graef. But, as Niday unlawfully acquired title to the property, he should not be allowed a commission as against the interests of Mrs. Graef. The court was therefore in error in charging $750 against Mrs. Graef.

We think the court was right in allowing Mr. Niday interest at 8 per cent. on moneys he advanced for taxes and other items and in protecting title and operating the property, and in charging Niday the same rate upon receipts.

[5] Appellee urges that the court erred in not allowing her all the items of an expense account for travel between Portland and Idaho, and in not allowing her $1,500 as attorneys' fees. No authority is cited for allowance of other than statutory costs, or for allowing attorney's fees, and as to such items we affirm the ruling of the District Court.

It is ordered that the decree of the District Court be affirmed except as to the order for accounting and the accounting had.

The cause is therefore remanded, with directions to the District Court to modify the decree by revising the account as indicated, and when so revised the decree will stand affirmed in all respects; costs to be taxed against defendant Niday.

### On Petition for Rehearing and Modification of Decree.

PER CURIAM. Petition of appellants and cross-appellees for rehearing denied.

Petition of appellee and cross-appellant for modification of decree as to counsel fees granted, and the decree of this court will be amended, so as to direct the allowance of an attorney's fee of $600 in favor of appellee and cross-appellant in the Circuit Court of Appeals, and directing that the District Court allow a reasonable attorney's fee for services heretofore rendered in that court.