DORA MILLER, as Guardian, etc., *Appellant*, v.
DORA MILLER et al., *Appellees*.

No. 18,196.

DORA MILLER, as Guardian, etc., *Appellant*, v.
FLORENCE WAYMIRE et al., *Appellees*.

No. 18,009.

SYLLABUS BY THE COURT.

1. DIVORCE—*Valid in State Where Decree Was Rendered—Valid Here.* By a statute of this state any judgment or decree of divorce rendered upon publication service in any state of the United States in conformity to the laws thereof has the same force and must be given the same faith and credit as if rendered by a court of this state.

2. JURISDICTION—*Judgment—Collateral Attack—Direct Proceedings.* It is a law of this state that whenever the jurisdiction of a court depends upon a fact properly litigated and determined in the action itself, the judgment rendered finding the fact is conclusive evidence of its existence and of the jurisdiction of the court until the judgment is vacated, reversed or annulled in a direct proceeding instituted for that purpose.

3. JUDGMENT—*In Foreign State—Residence—Publication Service—Can Not be Impeached Collaterally.* Under the laws of the territory of Utah it was necessary for the plaintiff in an action for divorce to plead and prove residence in the territory for one year prior to the commencement of the proceeding. *Held*, that a judgment of divorce rendered upon publication service against a resident of this state by a court of Utah having jurisdiction of actions for divorce, as the result of proceedings in all respects regular, can not be collaterally impeached in this state on the ground that the plaintiff was in fact a resident of Kansas and not of Utah.

4. —— *Fraud.* Neither can such judgment be collaterally impeached on the ground that it was procured by means of fraud practiced by the successful party.

Appeals from Linn district court. Opinion filed March 8, 1913. Affirmed.

*Joe Ralston,* of Burlington, and *G. R. Stephenson,* of Yates Center, for the appellant.

*John A. Hall,* of Pleasanton, for appellees J. R. Holmes et al.

*G. H. Lamb,* and *W. E. Hogueland,* both of Yates Center, for appellees Glenn Waymire et al.; *W. R. Biddle,* of Fort Scott, of counsel.

The opinion of the court was delivered by

BURCH, J.: The action in the district court was one of ejectment and for partition. It was brought by Dora Miller, as guardian of her mother, Maggie Waymire, an insane person. The property in controversy formerly belonged to Hiram Waymire, the plaintiff's father, and is now claimed by J. R. Holmes. Hiram Waymire died in August, 1908. The petition asserts that the Holmes title is invalid, and that upon the death of Hiram Waymire the land became the property of Maggie Waymire and Dora Miller. Judgment was rendered against the plaintiff and she appeals.

Hiram Waymire and Maggie Haflin were married at Anderson, Ind., on April 29, 1869. One child was born to them, Dora, now Dora Miller. In 1877 the family came to Kansas, and established a residence at Pleasanton, in Linn county. On May 10, 1882, proceedings were had in the probate court of Linn county, whereby Maggie Waymire was found to be insane, and pursuant to such proceedings she was taken to the state hospital for the insane, at Osawatomie, on May 17, 1882, where she has since been confined. The record made at the time of her admission to the hospital shows that her disease was inherited, her father having been insane; that it took the form of melancholia with suicidal tendencies, and that at times she was quite rational. Dr. Uhls, superintendent of the hospital since 1899, has known her condition since 1895, and has never known her to

Miller v. Miller.

have a lucid interval. On May 10, 1882, letters of guardianship were issued to Hiram Waymire for his wife, and he took the oath and gave the bond required in such cases. In March, 1883, Hiram Waymire commenced an action for a divorce against his wife, in Linn county, alleging residence in Kansas. This action was dismissed in August, 1883. In September, 1883, he was granted a divorce from his wife by the probate court of Salt Lake county, Utah, a court possessing jurisdiction over the subject of divorce. In November, 1883, he was married to Florence Shepard, with whom he lived as his wife until his death, a period of approximately twenty-five years. Six children were born to them, two of whom survive and are defendants in the action. The year following his second marriage, Hiram Waymire established a residence at Yates Center, in Woodson county, where he spent the remainder of his life, and his daughter Dora continued to be a member of his family until her marriage in 1891.

In the year 1888, Hiram Waymire and Florence Waymire executed a deed of the land in controversy to Clara J. Holcomb. It was purchased by Louisa Holmes in 1895, from whom her son, J. R. Holmes, inherits. Since 1895 the land has been the homestead of the Holmes families.

In April, 1909, an amicable division of the estate left by Hiram Waymire was made between Dora Miller on the one side and Florence Waymire and her two children on the other. Dora Miller received $1250 in money and deeds to certain real estate. She executed deeds on her part, and a bill of sale of the personal property, in return. The deeds which she accepted contain the following recitation:

"Whereas, Hiram Waymire died intestate in the summer of 1908, leaving surviving him an estate of real and personal property, and Florence Waymire, his widow, and Glenna Waymire, Arthur Waymire and Dora Miller, his children, being his sole surviving heirs."

In August, 1910, Dora Miller took out letters of guardianship of her mother, and on the same day commenced the action in which the present appeal is taken. The proceedings in the Utah divorce case and the laws of Utah governing them were pleaded and proved. Residence in the territory of Utah for one year was required of plaintiffs in actions for divorce, and that fact was alleged in the petition and found in the judgment, together with a legal cause for divorce. After proper foundation had been laid, service was made by publication, which was in all respects regular. The judgment recited that, upon proof taken, all the material allegations of the petition were sustained by testimony, free from all legal exceptions to its competency, admissibility and sufficiency. If the Utah divorce proceedings are not utterly void they can not be collaterally attacked in this action, and the plaintiff must fail.

It is claimed that Hiram Waymire was not a resident of the territory of Utah, and consequently that the probate court of Salt Lake county had no jurisdiction to grant the divorce. In the course of the trial some testimony was given that Hiram Waymire was away from Pleasanton from June to August, 1883, that he went to Utah about the first of September, 1883, and that he did not return to Pleasanton until the latter part of March, 1884. Some of this evidence came from sources confessedly unfriendly to Hiram Waymire and to Florence Waymire and her children.

If the district court had been retrying the subject of Hiram Waymire's residence in 1882 and 1883, for the purpose of determining the validity of the Utah decree, it would have had the right to insist upon the most complete and convincing proof. The presumptions are all in favor of the regularity of the Utah decree. Besides this, some twenty-eight years had gone by before a reinvestigation was suggested. Following the Utah decree the marriage of Hiram

Waymire and Florence Shepard was duly solemnized. For a quarter of a century they demeaned themselves before the eyes of the world as husband and wife, and in the interest of innocence, morality, and the sanctity of the marriage relation, the presumption in favor of the validity of that marriage is the strongest known to the law. (*Shepard v. Carter*, 86 Kan. 125, 119 Pac. 533.) The district court, however, was not permitted in this action of ejectment to reëxamine questions put in issue and litigated in and decided by the Utah court in the divorce case. It is true that judgments may be collaterally attacked for want of jurisdiction, and that the Utah court had no jurisdiction to render the decree unless the plaintiff had been a resident of the territory for the statutory period. The fact of such residence, however, was a matter which the plaintiff was obliged to plead and prove as a part of his cause of action. The ascertainment of the fact by the court necessarily preceded an investigation of the merits. Jurisdiction over the subject matter, the plaintiff's petition, and lawful service on the defendant, gave the court jurisdiction to determine whether or not it had authority to proceed, and its judgment finding the fact is as conclusive as if both parties had actually appeared and the case had been contested on the ground of the nonresidence of the plaintiff, it being settled law in this state that whenever jurisdiction depends on a fact properly litigated and determined in the action itself, the judgment rendered is conclusive evidence of the fact, and of jurisdiction, until it is reversed or is vacated in a direct proceeding for the purpose. (*In re Wallace*, 75 Kan. 432, 89 Pac. 687; *McCormick v. McCormick*, 82 Kan. 31, 107 Pac. 546, and cases cited in these opinions.)

It is insisted, however, that the decree is void because it must have been induced by false testimony and the suppression of evidence regarding Hiram Waymire's residence, and consequently that jurisdiction

was obtained by fraud. Authorities are numerous which sustain this contention, but, as pointed out in *Plaster Co. v. Blue Rapids Township,* 81 Kan. 730, 106 Pac. 1079, *McCormick v. McCormick,* supra, and *Bleakley v. Barclay,* 75 Kan. 462, 89 Pac. 906, they are unsound. The fraud, if any, did not relate to an extrinsic or collateral matter, but to a matter inherent in the cause of action itself, which the Utah court was obliged to investigate and determine. That court was just as competent to test the credibility of witnesses, sift evidence and determine whether or not the burden of proof had been sustained, as a Kansas court sitting for the trial of the same question twenty-eight years later, and a wise public policy forbids the reinvestigation of adjudicated controversies when the adjudication is collaterally attacked for fraud in some other proceeding.

"The mischief of retrying every case in which the judgment or decree rendered on false testimony, given by perjured witnesses, or on contracts or documents whose genuineness or validity was in issue, and which are afterwards ascertained to be forged or fraudulent, would be greater, by reason of the endless nature of the strife, than any compensation arising from doing justice in individual cases." (*United States v. Throckmorton,* 98 U. S. 61, 68.)

The case of *Litowich v. Litowich,* 19 Kan. 451, decided by this court in 1878, is cited in opposition to the foregoing views. Litowich procured a divorce from his wife in Utah. Neither party was a resident of Utah or had ever been there. In a subsequent action by the wife for alimony the validity of the Utah divorce was put in issue and all the facts relating to its procurement were developed in evidence. The divorce was held to be void for want of jurisdiction in the court rendering it, and it was held that want of jurisdiction could be shown by evidence outside the divorce court. The question here encountered, collateral attack upon a

Miller v. Miller.

matter regularly adjudicated as a portion of the merits of the controversy, was not raised, considered, or decided, and the case was disposed of as if the divorce were directly assailed by the alimony action.

Courts generally have permitted foreign divorce decrees to be impeached "for want of jurisdiction" when other judgments could not have been similarly attacked, because of reluctance to permit foreign courts to fix the marital status of resident citizens and because of the peculiar character of the marriage relation. The marriage status has been regarded as a kind of *res* having no *situs* in the state granting the divorce unless one or both of the parties lived there. This attitude is disclosed in the case of *Hood v. The State*, 56 Ind. 263, the first authority cited in *Litowich v. Litowich.* The opinion reads as follows:

"To avoid misconstruction, we wish it to be borne in mind, that the record of the suit in the Territory of Utah, in question in this case, was not one upon an ordinary, simple contract between parties, who could make and rescind such contract at pleasure, but it was a suit to sever the bonds of matrimony between the parties in that suit; to dissolve a relation into which the parties could enter only in accordance with the law of the state, and which could not be dissolved by act of the parties, but only by permission of the state having, at the time, jurisdiction over both or one of them. As is well said by Stuart, J., in *Noel v. Ewing*, 9 Ind. 37: 'Marriage is more than a contract. It is not a mere matter of pecuniary consideration. It is a great public institution, giving character to our whole civil polity.' It is a status; a domestic relation resulting from a consummated contract to marry. *Ditson v. Ditson*, 4 R. I. 87; *The People v. Dawell*, 25 Mich. 247. It is to a proceeding to dissolve such a relation, that what is said in this case applies." (p. 270.)

All this is well said, but it does not affect the doctrine of collateral attack.

Other courts have regarded foreign divorce decrees based on publication service as belonging to a special

class, because they are not protected by the full faith and credit clause of the constitution of the United States. Following the decision in *Haddock v. Haddock,* 201 U. S. 562, the legislature of this state placed such decrees on the same basis as judgments of our own courts (Laws 1907, ch. 184, § 1, Civ. Code, § 678*a*), and the judgment of the Utah court granting Hiram Waymire a divorce is to be accorded the same force and the same faith and credit as if it had been rendered by a district court of Kansas. If that judgment had been rendered by a district court of Kansas, it would be subject to impeachment for sufficient cause. It could be set aside, or its effect could be nullified, for want of jurisdiction and for fraud; but it could be impeached on the ground that the plaintiff had not resided in the state for the statutory period, or for fraud practiced by the successful party, only in a direct action instituted for that purpose, and not in a collateral proceeding brought for the purpose of trying the title to real estate.

The Utah judgment is further questioned because letters of guardianship for the defendant had been issued to the plaintiff in Kansas. The proof was that the lunacy proceeding was not instituted by Hiram Waymire, and that it was a mere paper affair, void in law and insufficient to sustain the appointment of a guardian. The defendants argue that these facts free the conduct of Hiram Waymire in suing one who was nominally his ward from impropriety. The court, however, does not deem them material. If the personal interest of Hiram Waymire in the divorce action conflicted with duties owed by him in a representative capacity to the defendant in that action, the jurisdiction of the Utah court was not affected. In its worst aspect his conduct could only be regarded as fraudulent. The ground of relief against the judgment would

Miller v. Miller.

be fraud practiced by the successful party, and that relief could be obtained only in a direct proceeding.

It is well settled that the Utah court was not ousted of jurisdiction and that its judgment was not void because the defendant was insane.     (Note, 39 L. R. A. 775.)

This case affords a practical illustration of the wisdom of holding judgments like that rendered by the Utah court conclusive against collateral attack.     The action is not instituted for the benefit of Maggie Waymire.     She has long been dead to the world and all its sordidness.     If the plaintiff were to succeed she would dishonor her father's memory, fill with shame and disgrace the declining years of the woman who so long stood toward her in the relation of mother, bastardize her father's living children, and dispossess a second generation of innocent occupants of the land of their homestead.     These consequences are so appalling that they ought not to be contemplated except as necessary results of a direct action specially instituted at the behest of the sternest kind of duty.

The judgment of the district court is affirmed.

The action in the case of *Miller v. Waymire,* number 18,009, is of the same character as that involved in the case just decided, except that the land in controversy is claimed by Florence Waymire and her children.     The facts were not as fully developed as in the companion case, and the court sustained a demurrer to the plaintiff's evidence.     The plaintiff herself, however, pleaded the proceedings in the Utah divorce case, and since the decree rendered in that suit can not be collaterally attacked, the judgment of the district court is affirmed.