(No. 19519.—

NELLIE T. WALSH *et al.* Plaintiffs in Error, *vs.* THE STOCK YARDS TRUST AND SAVINGS BANK *et al.* Defendants in Error.

*Opinion filed June 20, 1930.*

GREENBERG, BLECH & HERSON, (LOUIS GREENBERG, of counsel,) for plaintiffs in error.

JOHN T. FITZGERALD, SHERMAN C. SPITZER, and CHRISTOPHER G. KINNEY, for defendants in error.

Mr. COMMISSIONER EDMUNDS reported this opinion:

Nellie T. Walsh, and Edward J. O'Shaughnessy, a minor, by Nellie T. Walsh, his next friend, the daughter and grandson and only heirs-at-law of Mary F. Walsh, deceased, filed their bill in the circuit court of Cook county to set aside a deed executed by Mary F. Walsh in her lifetime. S. M. Glover, Harry E. Raymond, Michael J. Flynn, Chan C. Foster, Bessie Leavitt and the Stock Yards Trust and Savings Bank were named as defendants. The cause is here on appeal from a decree dismissing the bill for want of equity.

The bill alleges that Mary F. Walsh in her lifetime, and on July 16, 1927, was the owner in fee of the premises described as (legally describing them) and bearing numbers from 5659 to 5669 Washington boulevard, in the city of Chicago; that the premises are improved with ninety apartments, of two, three and four rooms each; that Mary F. acquired the premises by warranty deed for a consideration of $555,000, being $75,000 in cash and two assumed mortgages, one for $375,000 and the other for $110,000; that from date of her acquisition of the premises, January 5, 1924, to July 16, 1927, she received rents therefrom at the rate of $75,000 per year; that from the date of acquisition to July 16, 1927, she had used the rents and profits to reduce the encumbrances, and did reduce the encumbrances from $485,000 to approximately $366,000, resulting in an increase in her equity so that it became worth the sum of $194,000; that at the time the premises were acquired she was seventy-nine years of age, and by reason of her age her physical and mental condition was weak, infirm and decrepit, and she was compelled to use the services of George A. Falkenberg, her son-in-law, to manage the premises for her; that in the month of June, 1927, she discovered that Falkenberg had for some time neglected the management of the premises and had not accounted to her for all the rents but had converted large sums of money to his own

use; that oratrix prevailed upon her to discharge Falkenberg from the management of the building; that because of the straightened financial condition of Mary F., oratrix advised her to offer the premises for sale; that during the month of June, 1927, certain real estate operators doing business as Love & Co. informed Mary F. that they had a prospective purchaser for the premises and introduced to her and oratrix S. M. Glover; that Glover, and Harry E. Raymond, representing himself to be Glover's attorney, introduced Michael Flynn and Chan C. Foster as prospective purchasers of the premises; that Glover, Raymond, Flynn and Foster conspired together to obtain a deed to the premises for a grossly inadequate consideration by representing to oratrix and Mary F. that the property would be foreclosed upon by reason of the straightened circumstances of Mary F.; that said parties then and there promised to pay Mary F. the sum of $30,000, allow her to remain in possession of one apartment for one year, pay her $100 per month for one year for the education of Edward J. O'Shaughnessy, her grandson, and further pay her $25,000 as her share of the profits to be made in the event of re-sale of the premises; that the promises were made for the purpose of influencing her to deed over the premises and without any intention to keep the promises; that during the month of July, 1927, the real estate firms of Hastings & Co. and Driscoll & Co. offered to procure a customer to exchange the equity of Mary F. for property owned by Bessie Leavitt and consisting of eighteen apartments and four stores; that on July 14, 1927, an agreement to exchange was executed by and between Mary F. and Bessie Leavitt, which agreement was recorded; that Glover, Raymond, Flynn and Foster having discovered said agreement and fearing Mary F. would execute a warranty deed to her premises to Bessie Leavitt, and knowing that she was physically and mentally incompetent and unable to understand the business that she was then engaged in, by reason of her physical and mental

inefficiency and incompetency, and in order to obtain title to the premises, persuaded her to abandon her agreement with Bessie Leavitt, claiming the consideration therein was inadequate and persuaded her to deed the property to the Stock Yards Trust and Savings Bank; that in consideration thereof said parties deposited with the bank a sum of money equal to approximately $14,700, which sum was not turned over to Mary F. but was held subject to the settlement and removal of the cloud occasioned by the agreement with Bessie Leavitt; that Glover, Raymond, Flynn, Foster and the Stock Yards Trust and Savings Bank confederated and conspired to procure the warranty deed by making the promises above mentioned, all of which promises Mary F. relied upon but which promises were never kept or performed by defendants or either of them; that said defendants induced Mary F. to pay them an additional sum of $1200 to settle with Bessie Leavitt and remove the cloud occasioned by the Leavitt contract; that defendants never paid said money to Bessie Leavitt but have retained it themselves; that the Stock Yards Trust and Savings Bank holds title to the premises, but oratrix does not know and cannot ascertain for whose benefit the bank holds the title; that upon information and belief the bank now holds title for Glover, Raymond, Flynn and Foster as well as itself; that up to July 16, 1927, when defendants induced Mary F. to execute the deed, she was not in arrears in payments on the first mortgage but was in arrears of $800 or $900 on the second and was unable to meet the 1926 taxes; that Mary F. without difficulty could have procured financial assistance to meet the obligations promptly, but defendants knowing full well that oratrix lacked sufficient experience in real estate values and financial matters, and further knowing that Mary F. was "mentally imbecilic" and incompetent and physically aged and in a state of decay, threatened oratrix and Mary F. that the property would be taken away under foreclosure; that the threats had greatly influenced oratrix

and rendered the mental condition of Mary F. incapable of resisting the numerous false promises made by defendants relative to the consideration she would receive for the deed; that the consideration paid for execution of the deed was the sum of approximately $14,700, the exact amount being unknown to oratrix, and was left with the Stock Yards Trust and Savings Bank; that Mary F. died on January 2, 1928; that on January 18, 1928, the bank, without the approval of the heirs-at-law of Mary F., caused letters of administration to be issued to itself out of the probate court of Cook county and has lately paid oratrix the sum of $5000 as beneficiary and heir of Mary F.; that Mary F. never received, during her lifetime, any part of the consideration for the execution by her of the warranty deed of July 16, 1927; that on July 16, 1927, she was approximately eighty-three years of age and was physically and mentally incompetent and unable to transact any business; that she did not understand the nature of the transactions that she was then engaged in; that the defendants, fully knowing her incompetency, conspired and unlawfully coerced and influenced her to deed the property to the Stock Yards Trust and Savings Bank, making divers false representations and promises as above set forth, knowing full well that the representations and promises were false and fraudulent and that Mary F.'s physical and mental condition was poor, insufficient and incompetent to cope with the threats and promises made by defendants and each of them. The bill tenders the $5000 paid to oratrix as above stated and offers to pay such sums as have been by defendants properly expended in the maintenance of the premises. Attached as an exhibit to the bill is a copy of the deed executed by Mary F. on July 16, 1927, stating the consideration as "ten ($10.00) dollars, in hand, paid." Other exhibits are a copy of the contract between Mary F. and Bessie Leavitt, and a copy of the deed by which Mary F. acquired title to the premises in question.

The answer of the Stock Yards Trust and Savings Bank disclaims knowledge of many of the allegations of the bill. It alleges that prior to the date of the deed it had no acquaintance with oratrix or Mary F. Walsh; that on July 16, 1927, Mary F., oratrix, Glover, Raymond, Flynn and Foster came together to the office of the bank and the bank was asked to accept a deed of conveyance of the property from Mary F., whereupon the deed was made, executed and delivered; that the bank had not, and has not now, any individual interest of its own in the property but holds title thereto for the use and benefit of Flynn and Foster; that at the time of the delivery of the deed there was paid to Mary F. by Flynn and Foster the sum of $14,700 and said sum was deposited by her in a savings account with the bank; that on August 27, 1927, she withdrew from the account $1500, put it into a cashier's check, and left the check with the bank pending the clearing of objections to the property; that on September 9, 1927, she received the check and deposited the amount therein in her savings account, where it remained until the time of her death. The answer denies that the bank conspired with Glover, Raymond, Flynn and Foster, or any one of them, to procure the deed, or made any promises to Mary F. of any consideration, and denies that it in any way threatened her or influenced her. The bank's answer further alleges that it never knew oratrix lacked experience in real estate values or financial matters, and that she consented to its appointment as administrator. It admits that Mary F. was aged, but denies that she was "mentally imbecilic" or incompetent or in a state of decay. It denies that she did not understand the nature of the transactions that she was then engaged in or was unable to transact business, or that her physical or mental condition was poor or insufficient, or that she was incompetent to cope with the threats or promises made by defendants. It admits that the cash consideration paid for the execution of the deed was $14,700, of which sum the

bank paid no part. It alleges that it does not know whether the consideration paid for the property was inadequate, unfair or unreasonable, or whether Mary F. would have accepted the sum of $14,700 if she had not feared foreclosure proceedings and the total loss of the premises.

The answer of Glover and Raymond denies that they conspired, as charged in the bill, to make threats and false promises and representations to secure the deed. It denies that they knew oratrix lacked experience in real estate values or financial matters and denies that Mary F. Walsh was mentally imbecilic or incompetent or in a state of decay, and alleges that while she was aged, she was fully competent mentally and well understood the transactions involved. It further alleges, among other things, that the conveyance was for the benefit of Flynn and Foster; that the total purchase price for the property was in excess of the sum of $400,000, and that Mary F. received a full and adequate consideration for the deed.

The answer of Flynn and Foster denies that they conspired, as charged in the bill, to make threats and false promises and representations to secure the deed, and alleges, among other things, that Mary F. Walsh was apparently an elderly woman and somewhat feeble physically but that they do not know how old she was. It denies that she was physically and mentally incompetent and in a state of decay and unable to understand the business that she was then engaged in and unable to transact business, and denies, if she was incompetent, that they had any knowledge or means of knowledge of such condition. It further denies that her physical or mental condition was poor or insufficient or that she was incompetent to cope with any threat or promise made by any of the defendants. It alleges that they paid to Mary F. the sum of $14,700 and agreed to pay certain items which with existing incumbrances brought the purchase price of the premises to an amount greater than $400,000, and that they are ready, willing and even anxious

to re-convey the property if oratrix will pay them the sums of money which they have paid for the purchase of the premises, together with the sums of money expended by them for maintenance and up-keep.

On November 28, 1928, an order was entered that the cause be set for hearing on December 18, 1928. This order also provided: "The replications of complainants to be filed instanter, and the defendants herein have this day tendered to the complainants a deed to the real estate described in the bill of complaint, and the same was refused." The record shows, also, that on December 21, 1928, the cause was referred to a master "to take proof of the accounting feature and the items of expenses disbursed by the defendants in the purchase and up-keep of the premises made the subject matter of the bill of complaint heretofore filed herein." This latter order also provided that the master's report be made on or before January 8, 1929, and that the cause be set for hearing "upon the merits of the case;" January 10, 1929, before the court. The master found that from July 16, 1927, to January 1, 1929, Flynn and Foster had collected rents in the sum of $82,968.62 and that they had made expenditures in the sum of $129,940.80, leaving a net balance due them of $46,972.18. The report was filed January 15, 1929. On January 29, 1929, final decree was entered. It contains a finding that "without admitting any of the allegations or averments in the bill of complaint herein but solely in order to bring about a speedy conclusion to this litigation and without waiver of any defense herein, the defendants Chan C. Foster and Michael J. Flynn did heretofore in open court voluntarily tender to the complainants herein a conveyance of the premises involved in this suit, asking in return that they be paid the amount of moneys heretofore expended by them in and about the purchase of said premises and the maintenance, repair, up-keep, taxes, assessments," etc. Then follows a further finding that the court entered a rule upon complainants requiring them to pay in

to the clerk of the court, to be held by him to abide the event, the amount contended by complainants to be due Flynn and Foster to cover such reimbursement; that complainants thereupon deposited the sum of $5000; that thereafter by agreement the matter was referred to the master, who found that $46,972.18 should be paid Flynn and Foster; that upon the coming in of the master's report the court entered an interlocutory order granting the complainants five days in which to tender or cause to be tendered and paid to Flynn and Foster said amount; that the period of five days elapsed and no tender was made of said amount, and that complainants requested ninety days within which to make such payment, which request was denied by the court. The bill was dismissed for want of equity and an appeal granted upon the filing of bond for $20,000.

The theory apparently underlying the decree is, that upon tender back to the heirs of Mary F. Walsh of a deed to the property the heirs became obligated to make restoration to certain defendants, not only of the purchase money paid but also of money expended by such defendants for maintenance, repair and up-keep of the premises while held by them. Certain defendants tendered a deed, and the heirs of Mary F. were ruled to meet this tender by paying, within five days, the sum of $46,972.18. Failing to make such payment their bill was held to be without equity and its dismissal followed. If the theory that the heirs of the grantor were bound to make such payment is properly applicable to the present record the decree was proper. If, on the other hand, the record discloses a situation under which the defendants were not entitled, at the time the decree was entered, to reimbursement in this or any other amount paid or expended by them, apart from the $5000 tendered by the bill, the decree was in error.

Where a grantee has notice of the grantor's incapacity to manage his property and delivers to the latter money or property in exchange for lands and the money or prop-

erty is lost or squandered, or if it appears the grantee intended to defraud such grantor out of his property, a court of chancery may set aside the sale without requiring the consideration to be restored. (*Hardy* v. *Dyas*, 203 Ill. 211.) In *Ronan* v. *Bluhm*, 173 Ill. 277, this court said: "If the grantee, with notice of the incapacity of the insane grantor to manage his estate, invests such grantor with the possession of money or property in exchange for lands, and the said money or property, by reason of the mental incapacity of the grantor, is wasted and lost, or if the grantee, with such knowledge, obtains a conveyance of the lands from such a grantor for a consideration so inadequate as to be inequitable and to evince that it was his intention to take advantage of the infirmity of the grantor and to defraud him, such a grantee would have no standing to invoke the equitable rule that 'he who asks equity must do equity,' and demand that under the operation of that maxim a court of equity should refuse to set aside the conveyance except upon the imposition of such terms as would amply protect him from any loss. Such a rule would be but to guarantee that although the attempt to fraudulently procure the property of an insane man might fail, yet the perpetrator of the attempt would be protected by law from any loss in the transaction." There being no hearing on the merits, although such hearing was evidently contemplated by the order in which the cause was referred to a master, the question as to whether the present case is one where reimbursement by the grantor is called for can be determined only upon the basis of the pleadings. The bill alleges that when she executed the deed of conveyance of July 16, 1927, Mary F., a woman eighty-three years of age, was mentally incompetent and unable to transact any business or to understand the business that she was then engaged in. It also alleges that the grantees knew that Mary F. was mentally imbecilic and that her mental condition was insufficient to cope with the threats and promises made by defendants. It

alleges, further, the inadequacy of the consideration paid and the grantees' intention to defraud Mary F. The answers join issue on these points. Upon the making of proofs sustaining the substance of the allegations made in the bill and denied by the answers the heirs of Mary F. would have been in position to invoke the principles laid down by the above authorities. Moreover, the bill alleges that Mary F. never received, during her lifetime, any part of the consideration for execution of the deed. It has been held that an instrument made by an insane person before inquest found will be set aside without requiring re-payment of consideration where the benefit of the consideration has not been received by the insane person. (*Jordan* v. *Kirkpatrick*, 251 Ill. 116.) The result of the chancellor's rulings and decree was to deprive the heirs of Mary F. of opportunity to make a showing of merits, under which they might have been entitled to relief without any payment to defendants beyond the $5000 which was tendered, and the decree was therefore improper.

It is contended that because the bill contains an allegation tendering reimbursement of the amount expended in the maintenance of the premises the heirs of Mary F. Walsh are now estopped from urging error in the decree. Under the above authorities this allegation was superfluous, and there is no sufficient reason to attach to it the consequences for which defendants contend. *Barnard* v. *Cushman*, 35 Ill. 451.

The decree of the circuit court of Cook county is reversed and the cause remanded.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Edmunds is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Reversed and remanded.*