**UNITED STATES v. MASHUNKASHEY et al. ***

**MASHUNKASHEY v. UNITED STATES.**

**STAFFORD v. SAME.**

Nos. 1030–1032.

Circuit Court of Appeals, Tenth Circuit. Sept. 13, 1934.

*Rehearing denied — F.(2d) —.

Pedro Capo-Rodriguez, of Washington, D. C., and Joe W. Howard, Asst. U. S. Atty., of Tulsa, Okl. (Harry W. Blair, Asst. Atty. Gen., C. E. Bailey, U. S. Atty., of Tulsa, Okl., and Clifford E. Fix, Sp. Asst. to Atty. Gen., on the brief), for the United States.

C. B. Stuart, of Tulsa, Okl. (M. L. Holcombe and Clarence Lohman, both of Pawhuska, Okl., and E. J. Doerner, W. E. Hudson, and R. D. Hudson, all of Tulsa, Okl., on the brief), for Rosa Mashunkashey and others.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

BRATTON, Circuit Judge.

Charles Mashunkashey, a restricted, full-blood Osage Indian, and Rosa Mashunkashey, a white woman, were married in March, 1923 and continued as husband and wife until October 6, 1930, when she secured a decree of divorce, rendered by the district court of Osage county, Okl.

The Secretary of the Interior, on March 21, 1928, granted Charles a certificate of competency effective April 21, 1928. After a hearing, the Secretary revoked it on April 30, 1931. During the time he held the certificate, Charles received through his headright and by inheritance large sums of money approximating $200,000 from the Osage Indian Agency, most of which found its way into Rosa's possession, while his remaining property consisted almost exclusively of some dry unimproved land of small value.

On March 3, 1930, Rosa applied to the county court of Osage county for her appointment as guardian of Charles, the grounds being that he owned a substantial estate; that he was addicted to the excessive use of intoxicating liquor and was squandering his property. Eight days later she was appointed and qualified, and on the same day applied to the court for an order authorizing her to place him in a sanitarium in Kansas City, Mo., for treatment for alcoholism. An order granting the application, with provision that he should not be confined there more than six months, was entered instanter and he was treated at that institution. During the following August, Rosa applied to the court for a like order authorizing and directing her to have Charles placed in a named sanitarium at Pueblo, Colo., for treatment. An order was entered directing that he be placed in the institution for a period of not less than six months. He was taken there, remained about two months, and then escaped. She was discharged as guardian in April, 1931.

On September 27, 1930, while Charles was confined in the sanitarium at Pueblo, Rosa filed her petition for divorce in the district court of Osage county; the grounds being habitual drunkenness and coming home at all hours of the night in a maudlin condition. She and her attorney went immediately to Pueblo to see Charles, taking with them a proposed written contract of property settlement. It was executed there under date of September 29th, and provided that each spouse quitclaimed all right or interest to the property then possessed by the other accruing or growing out of the marital relation; that he would pay her one-third of his quarterly annuity thereafter accruing; that the provisions of the contract should be embodied in the decree to be rendered in the pending divorce action; and that thereupon she should be deemed to have waived and relinquished any further right or claim to his property. The decree, entered about a week later, expressly approved, ratified and confirmed the settlement. Thereafter Charles instituted a suit in the district court of Tulsa county, Okl., to recover the property awarded to Rosa or the proceeds thereof. C. S. Walker was appointed receiver in that action on August 12, 1931, and he had in his possession as such receiver at the time this suit was filed in the court below, one Stinson Detroit airplane, one Packard automobile, one Cord roadster, and $15,000 in money, all formerly belonging to Charles. That case is still pending and the

receiver has not been discharged nor directed by the court appointing him to surrender possession of that property.

Thereafter the United States, in its own capacity and as guardian for Charles, instituted this action, seeking to cancel the certificate, to regain all the property formerly belonging to Charles or the proceeds thereof, and to restore it to the custody of the Secretary of the Interior. All persons claiming ownership or an interest in the several described parcels of real estate and personalty were joined as parties defendant with an appropriate prayer for the cancellation of the claims adversely affecting the title of the ward. It was alleged that the certificate was void because it was obtained through fraud and perjured testimony; that Charles, Rosa, and other named persons conspired together to thus obtain it; that after it had been secured in that manner and in furtherance of the fraudulent scheme, Rosa wrongfully and fraudulently obtained the money and property belonging to Charles; that with a part of the money she purchased from the defendant Missouri State Life Insurance Company two single payment life annuity insurance contracts, one irrevocable and the other revocable, in which she and the defendant Lucille Stafford, her daughter, were named as beneficiaries; that she paid $48,300 for one and $19,950 for the other; that the company had repaid $19,000 on the latter and attempted to cancel it; and that the property settlement and decree confirming it were each void.

Rosa and the other defendants named as coconspirators answered denying the charged conspiracy and denying that false and perjured testimony had been given to secure the certificate of competency. She specifically denied that she had wrongfully and fraudulently secured the money and property from her husband. She alleged that he gave it to her while the certificate was in force and that her title thereto had been adjudicated in the divorce decree; that the decree was res judicata and could not be attacked collaterally; and the jurisdiction of the trial court to take the property from the custody of the receiver of the state court was challenged.

The trial court found and concluded that the certificate was obtained through fraud, that is, in submitting false testimony in support of the application; that the Secretary of the Interior relied and acted upon that testimony and that for such reason the certificate was void from its date; that the property settlement and decree confirming it were

void; that Rosa had already surrendered to the receiver herein all the property in her possession or under her control obtained from the trust funds; that she was entitled to lot 9, block 27, Ridgeway addition to the city of Tulsa, then occupied as a home, together with the household furniture and fixtures situated in it; the proceeds of a loan of $5,000 made to Gandrade, III, and Roland S. Bond, and $20,000 in cash, all as compensation for her efforts and services in conserving and preserving the property of her husband and in the extinguishment of her rights as former wife, divorcee or otherwise; that Charles owned all the remaining property involved, including the life insurance policy; and that such property should be restored to the Secretary of the Interior for his use and benefit. The decree vacated, set aside, and held for naught the certificate from its date, the property settlement, and that part of the decree confirming it; awarded Rosa the described real and personal property and $20,000 in cash; awarded the remainder to Charles, and in effect quieted their respective titles; barred and estopped other defendants from having or claiming any right, title, or interest in the property belonging to Charles; directed the defendant Missouri State Life Insurance Company to issue a new policy, naming the Secretary of the Interior as beneficiary, and to make all future payments thereunder to him; and that the several named cases then pending in the state courts of Oklahoma be severally discontinued. It is unnecessary to note other provisions.

The United States appealed from that part of the decree granting Rosa title to the described property and cash. Rosa and Lucille Stafford perfected separate appeals from the respective parts of the decree adverse to them. The remaining defendants did not appeal. After the appeals had been thus perfected, the trial judge furnished this court a supplemental certificate in which it was stated that at the time the bill of complaint for a restraining order and the appointment of a receiver was presented to him, he declined to make any order in the premises until the United States Attorney, appearing for the plaintiff, advised him that he had conferred with Hon. Harry L. S. Halley, presiding judge of the district court of Tulsa county; that Judge Halley had assured the United States Attorney that it was entirely agreeable for the United States court to take custody of the property; that Judge Halley would direct the receiver appointed in the state court to surrender it to the receiver appointed by the United States court; that upon the assurance thus given C. S. Walker, the person already serving as receiver of the state court, was appointed receiver in this cause with direction to take charge of all the property involved.

The certificate of competency in question was issued under section 2, subd. 7, of the Act of June 28, 1906 (34 Stat. 539, 542), which provides: "That the Secretary of the Interior, in his discretion, at the request and upon the petition of any adult member of the tribe, may issue to such member a certificate of competency, authorizing him to sell and convey any of the lands deeded him by reason of this Act; except his homestead, which shall remain inalienable and nontaxable for a period of twenty-five years, or during the life of the homestead allottee, if upon investigation, consideration, and examination of the request he shall find any such member fully competent and capable of transacting his or her own business and caring for his or her own individual affairs. * * * "

The authority of the Secretary of the Interior to cancel such a certificate is contained in section 4 of the Act of February 27, 1925 (43 Stat. 1008, 25 USCA § 331 note), which contains the following proviso: "And provided further, That such revocation or cancellation of any certificate of competency shall not affect the legality of any transactions theretofore made by reason of the issuance of any certificate of competency."

It will be noted that the latter statute expressly provides that revocation by the Secretary shall not affect the legality of a previous transaction made in reliance upon the certificate. Such a certificate is valid intermediate its issuance and cancellation as to innocent third persons. Miller v. United States (C. C. A.) 57 F.(2d) 987. But we entertain no doubt that a court of equity has the power to cancel it effective from the date of its issuance as to persons participating in the acts evoking the cancellation or having knowledge of the facts and acquiring rights with that knowledge. The court found that the certificate was issued in reliance upon false and fraudulent testimony given at hearings conducted at the Osage Agency in support of the application and forwarded to the Secretary of the Interior. The testimony was submitted in the name of Charles and related to his education, training, profession, property possessed, and sobriety. The court failed to make a specific finding as to whether Rosa

participated in the fraud, but the record is replete with convincing evidence that Charles was an improvident person; that she induced him to make the application, attended some of the hearings, gave most of the answers, had full knowledge of the fraud perpetrated, and subsequently acquired the major part of the trust property in fulfillment of the scheme. Obviously, she was not a bona fide holder.

■ It is contended, however, that her title was adjudicated by the decree rendered in the divorce proceeding; that such decree is res judicata and cannot be attacked collaterally in this case. A United States court cannot set aside or vacate a judgment or decree rendered by a state court, nor require that court itself to do so. That is too well settled by recognized principles of comity and conduces too strongly to the finality of litigation in the state courts to require extended discussion or the citation of authorities. Folk v. Monsell (C. C. A.) 71 F.(2d) 816. But numerous cases place beyond question the authority of a United States court to deprive a party of the benefits of a judgment or decree obtained in a state court through fraud of the kind asserted here if the elements of federal and equity jurisdiction are present. In such a case, the court does not act as one of review; neither does it consider irregularities occurring in the proceedings of the state court. It scrutinizes the conduct of the party obtaining the judgment and if it is found that he was guilty of fraud in securing it, he is deprived of its benefits. The action operates upon the party, not the judgment or decree of the state court. Such a case presents a new and different cause of action from that determined by the state court and does not violate either recognized rules of comity or section 265 of the Judicial Code (28 USCA § 379). Arrowsmith v. Gleason, 129 U. S. 86, 9 S. Ct. 237, 32 L. Ed. 630; Marshall v. Holmes, 141 U. S. 589, 12 S. Ct. 62, 35 L. Ed. 870; McDaniel v. Traylor, 196 U. S. 415, 25 S. Ct. 369, 49 L. Ed. 533; Simon v. Southern Railway Co., 236 U. S. 115, 35 S. Ct. 255, 59 L. Ed. 492; Wells Fargo & Co. v. Taylor, 254 U. S. 175, 41 S. Ct. 93, 65 L. Ed. 205; Essanay Film Mfg. Co. v. Kane, 258 U. S. 358, 42 S. Ct. 318, 66 L. Ed. 658; Nat. Surety Co. v. State Bank of Humboldt (C. C. A.) 120 F. 593, 61 L. R. A. 394; Chicago, R. I. & P. R. Co. v. Callicotte (C. C. A.) 267 F. 799; Hewitt v. Hewitt (C. C. A.) 17 F.(2d) 716.

This case falls well within that doctrine because the decree of the state court was obtained through fraud. The jurisdiction of that court over the property depended upon the existence of a valid certificate of competency. Realizing that, Rosa expressly pleaded the certificate in her petition and invoked the jurisdiction of the court upon the strength of it, withholding the fact that it had been obtained through a fraudulent method to which she was a party.

■ The decree in this cause expressly undertook to cancel, vacate and set aside that of the state court in so far as it related to the property. In that respect it was erroneous. The court should have merely deprived Rosa of the further ownership and possession of the property, that is, the benefit of the decree rendered by the state court, without undertaking to vacate the decree itself. In that way the decree would not be affected while she would be shorn of the inequitable advantage gained from her fraud in securing it through use of the certificate fraudulently obtained. So the decree will be modified accordingly.

■ The jurisdiction of the court to make the award to Rosa is challenged. That challenge rests upon the contention that after concluding that the property had been wrongfully obtained from a restricted Indian, the exclusive authority of the court was to restore it to the Secretary of the Interior. The award was made in extinguishment of Rosa's rights as former wife, divorcee or otherwise and as compensation for her services in conserving the property. The authority of a court of equity to compensate the next friend of an incompetent Indian and his attorneys for their services in recovering and restoring the property of the Indian to the Secretary of the Interior was sustained in the case of United States v. Equitable Trust Co., 283 U. S. 738, 51 S. Ct. 639, 75 L. Ed. 1379. But there the claimants were without fault, acted in good faith and in the interest of the trust estate. Here, the certificate was obtained, the restrictions on alienation removed and the property subsequently acquired by Rosa all as the result of a fraudulent scheme on her part. She did not act in the interest of her husband, nor to conserve and preserve the property for him either as wife or divorcee. She desired to divest him of it and to acquire it herself. Except for the fraud to which she was a party the services would not have been rendered and this litigation would not have ensued. She certainly is not in position to appeal to a court of equity to grant relief by way of compensation for her services. Blank v. Aronson (C. C. A.) 187 F.

241; Niday v. Graef (C. C. A.) 279 F. 941; Adriaans v. Dill, 37 App. D. C. 59; Walsh v. Stock Yards Trust & Savings Bank, 340 Ill. 57, 172 N. E. 25.

 The last question involved relates to the action of the trial court in taking possession of the property already in the custody of the state court. As indicated, C. S. Walker is receiver of both courts. He took possession of the property previously described herein as receiver of the state court and had it in his custody at the time he was appointed receiver in this cause. The record is not clear whether he acquired custody of more in the same circumstances. It is shown that he now has all the trust funds previously in the possession and under the control of Rosa. A state court of competent jurisdiction first acquiring custody of property and having it in the possession of a receiver cannot be thereafter divested of that custody by an order of a United States court made in a subsequently instituted equitable action of this kind. Superior Oil Corp. v. Matlock (C. C. A.) 47 F.(2d) 993. And the certificate of the trial judge, to which reference has been made, does not affect the situation. It merely states that one of the attorneys advised him that the judge of the state court had stated that it was satisfactory for the United States court to take possession of the property and that its custody would be surrendered. If that court had voluntarily surrendered its custody, either by an appropriate order entered upon its records, or by a verbal statement of the trial judge made to the judge of the United States court, we would have an entirely different question. But the mere ex parte statement of an attorney that the judge of the state court had expressed a willingness to surrender possession of the property then in custodia legis was not enough to constitute a voluntary surrender. The effect of the order, in its relation to that property, was to divest that court of its exclusive jurisdiction over it. That part of the order must be vacated and further action concerning the property held in suspense until the state court has discharged the property from its custody or until it voluntarily surrenders it.

██ Concerning the appeal of Lucille Stafford, neither party has submitted a brief upon it. Accordingly, it may be treated as abandoned and will be dismissed. Rule 18, § 9 of this court.

In all other respects, we think the decree was right and should be affirmed.