223 F.2d 31
 Beatrice JOHNSON, Guardian and Curatrix of Marium Elizabeth
McDowell, a person of unsound mind, succeeded by The City
National Bank and Trust Company of Kansas City, Kansas City,
Missouri, Guardian and Curator, Appellant,
v.
The FIRST NATIONAL BANK IN WICHITA, KANSAS, Administrator of
the Estate of Thomas Scott McDowell, deceased; and
Elizabeth Penny McDowell, Appellee.
 No. 5015.
 United States Court of Appeals Tenth Circuit.
 May 18, 1955.
Rehearing Denied June 22, 1955.
 
 Lucian Lane and William F. Woodruff, Kansas City, Mo. (Woodruff & Lane, Kansas City, Mo., on the brief), for appellants.
 Wayne Coulson, Wichita, Kan. (Howard T. Fleeson, Homer V. Gooing, Paul R. Kitch, Wichita, Everett Minner and Harry Waite, Dodge City, Kan., on the brief), for appellees.
 Before PHILLIPS, Chief Judge, and MURRAH and PICKETT, Circuit Judges.
 MURRAH, Circuit Judge.
 
 
 1
 Appellant Guardian[1] instituted this action to vacate a decree of divorce obtained by Thomas Scott McDowell from his insane wife, Marium Elizabeth McDowell in the District Court of Ford County, Kansas, on the grounds that the decree is void for lack of jurisdiction and defects in the proceedings and voidable for fraud in its procurement. She seeks a judgment ultimately decreeing her ward to be the widow and sole surviving heir of McDowell.
 
 
 2
 Basing its jurisdiction upon diversity of citizenship and requisite amount in controversy, both of which are present, the trial court treated the suit as one in equity to annul the judgment for lack of jurisdiction and to deprive the successful party of the fruits of a judgment fraudulently procured. Bradburn v. McIntosh, 10 Cir., 159 F.2d 925; Hanson v. Hoffman, 10 Cir., 113 F.2d 780; Moffett v. Robbins, 10 Cir., 81 F.2d 431; United States v. Mashunkashey, 10 Cir., 72 F.2d 847; Annotation 160 A.L.R. 1349, 1359; Freeman on Judgments, 5th Ed., Vol. 3, Secs. 1182 and 1469. The court denied relief, however, holding that the divorce and the subject matter, and that the proceedings were valid and regular in every court had jurisdiction over the parties respect.
 
 
 3
 Appellant Guardian first attacks the jurisdiction of the divorce court contending that 'residence' as used in the Kansas statute authorizing service by publication means 'domicile' and that McDowell falsely and fraudulently stated in his affidavit for publication that his wife resided in Kansas City, Missouri, when he knew that she was mentally incompetent to abandon her marital domicile in Kansas.
 
 
 4
 At the outset it is important to keep in mind that in an independent proceedings of this kind the court will not go beyond the face of the challenged jurisdictional instruments to inquire into the verity of the facts they purport to show. Our inquiry is limited to defects appearing upon the face of the jurisdictional instruments, and more specifically whether in our case the requirements of the applicable Kansas statutes with respect to constructive service by publication have been met. If the instruments are found to be in compliance with the statutory requirements, the judgment is invulnerable to attack on jurisdictional grounds, and our inquiry on that issue is at an end. Larimer v. Knoyle, 43 Kan. 388, 23 P. 487; Davis v. Vinson Land Co., 76 Kan. 27, 90 P. 766; Miller v. Miller, 89 Kan. 151, 130 P. 681; Blair v. Blair, 96 Kan. 757, 153 P. 544; Gooden v. Lewis, 101 Kan. 482, 167 P. 1133; Marler v. Stewart Farm Mortgage Co., 111 Kan. 488, 207 P. 823; Potts v. West, 124 Kan. 815, 262 P. 569; Elfert v. Elfert, 132 Kan. 218, 294 P. 921; Morris v. Robbins, 83 Kan. 335, 111 P. 470. And this is so, whether the proceedings are collateral or direct. 1 Freeman on Judgments, Sec. 309. Equitable relief can be 'granted only upon fraud extrinsic to the matters tried and determined by the other court and which caused the court to render a wrong judgment, such as the successful party through fraud or deception preventing the unsuccessful from presenting his case, or from attending the trial, or where his attorney was induced to betray his client's interest, or other chicanery of that kind. * * *' Moffett v. Robbins, supra (81 F.2d 435); United States v. Throckmorton, 98 U.S. 61, 25 L.Ed. 93; United States v. Mashunkashey, supra; Horton v. Stegmyer, 8 Cir., 175 F. 756; Blair v. Blair, supra; Miller v. Miller, supra; Annotation 160 A.L.R. 1349; 3 Freeman on Judgments, sec. 1233. Even in the presence of extrinsic fraud, federal equity jurisdiction does not act upon the judgment assailed. It will act rather upon the successful parties to deprive them of the fruits of their fraudulent acts which operated to procure the judgment. Moffett v. Robbins, supra; United States v. Mashunkashey, supra; Annotation 160 A.L.R. 1349; 3 Freeman on Judgments, sec. 1178.
 
 
 5
 On the question of jurisdiction, Kan.G.S.1949 60-2525 provides for service by publication in actions to obtain a divorce where the defendant resides out of the state; and 6 service by publication upon the filing of an affidavit stating the non-residence of the defendant and that the plaintiff is unable to procure actual service on the defendant within the state. For purposes of service by publication in Kansas 'residence' and 'domicile' are synonymous. Gleason v. Gleason, 159 Kan. 448, 155 P.2d 465; Arnette v. Arnette, 162 Kan. 677, 178 P.2d 1019. Kan.G.S.1949 60-2527 provides that the publication must be made in an authorized newspaper for three consecutive weeks in the county where the petition is filed, and must contain pertinent information concerning the parties, the fact of the suit, and the necessity of answering within a stated period. 60-2528 provides that the publication is deemed complete when it is made in the manner and for the time prescribed in 60-2527 and that service shall be proved by affidavit of the printer and no default judgment shall be entered on such service until proof thereof is made and approved by the court, and filed. 60-1504 provides that when service by publication is proper, a copy of the petition with a copy of the publication notice attached thereto shall within three days after the first publication be enclosed in an envelope addressed to the defendant at his or her place of residence, postage paid, and deposited in the nearest post office, unless the plaintiff shall make and file an affidavit that such residence is unknown to the plaintiff, and cannot be ascertained by any means within the control of the plaintiff. 60-408 authorizes service by publication upon an insane person, as upon other defendants, provided that if there is a natural or legally appointed guardian for the insane person defendant, service shall also be made in the same manner upon such guardian. If there is no legally appointed guardian for such insane person defendant, or if such guardian fail to appear and answer in the action within the time fixed by the of the state; and 60-2526 provides for shall appoint a guardian ad litem for such insane person, and such guardian ad litem shall file proper pleadings which shall include a general denial of the plaintiff's petition, as shall put the plaintiff to proof of his cause of action.
 
 
 6
 The affidavit for publication in our case stated that the action was one for divorce based upon the ground of abandonment for more than one year; that the defendant is absent from the State of Kansas, residing at 3516 Summit Street, Kansas City, Missouri; that plaintiff is unable with diligence to procure personal or actual service of summons upon the defendant within the State of Kansas. The notice was published and proof thereof made as required by statute. The attorney for the plaintiff made due proof of mailing in compliance with 60-1504.
 
 
 7
 There was no legally appointed guardian of the insane defendant at the time of service by publication and no service by publication attempted upon a natural guardian, if existent, as required by 60-408. See also Mark v. Keightley, 133 Kan. 101, 298 P. 783; Suter Bros. v. Hebert, 133 Kan. 262, 299 P. 627; Hurd v. Baty, 149 Kan. 665, 88 P.2d 1031; Godsoe v. Harder, 164 Kan. 86, 187 P.2d 515; Pierson v. Brenneman, 171 Kan. 11, 229 P.2d 1019. There was no showing, however, of a natural guardian, or for that matter, that Kansas law recognizes a natural guardian of an insane person as in the case of minors. See Kan.G.S.1949 38-201. No contention is made here of non-compliance with 60-408 with respect to service by publication on a natural guardian, and we assume that there was no natural guardian within the meaning of the statute upon whom service by publication should have also been made. See Godsoe v. Harder, supra, 187 P.2d at page 519.
 
 
 8
 The record does show that the insane defendant's sister acted for her, that she received the service of summons which was mailed to the defendant at the institution where she was confined, that she employed an attorney who contacted a local attorney in Kansas. The attorney for the plaintiff filed a motion alleging completion of service by publication and the default of the defendant. He further alleged that the defendant was mentally incompetent to appear and conduct her defense, and prayed for the appointment of a guardian ad litem.
 
 
 9
 There being no legally appointed guardian, the court properly appointed a guardian ad litem in compliance with the statute. The guardian ad litem then filed a general denial in the action.
 
 
 10
 We conclude that service by publication upon the insane defendant was in accordance with the strict requirements of the applicable statutes and that the court thereby acquired jurisdiction of the parties and of the subject matter. The court having jurisdiction, was then empowered to, and did necessarily decide the issue of abandonment. And the determination of that issue essentially involved the question of defendant's intention and mental capacity to acquire a separate domicile for jurisdictional purposes. The verity of the affidavit was a matter at issue and necessarily decided by the divorce court. Indeed that court specifically found that the facts alleged in the affidavit were true. If they were false and fraudulent they were intrinsic to the trial court's judgment because they inhered in it, and the question of their falsity or fraudulent character is clearly outside the scope of our inquiry. 'The submission of perjured testimony or a fraudulent instrument on which the judgment rests is not enough, because a matter of that kind is necessarily intrinsic the proceedings. * * *' Moffett v. Robbins, supra; see also Larimer v. Knoyle, supra; Electric Plaster Co. v. Blue Rapids City TP,81 Kan. 730, 106 P. 1079, 25 L.R.A.,N.S., 1237; Miller v. Miller, supra; Blair v. Blair, supra.
 
 
 11
 Appellant complains of the failure of the divorce court to make a finding that the defendant was mentally competent for a period of more than one year after her separation from McDowell, and the failure to find that the notice of publication had been mailed to the defendant as required by Kansas statute. Complaint is also made of the failure of the judgment to correctly state the name of the publication in which publication service was made. But these are matters which do not go to the jurisdiction of the court over the parties or the subject matter. If they are erroneous, they are clearly unassailable here; if fraudulent, they are intrinsic to the court's judgment and likewise unassailable here. Moffett v. Robbins, supra; United States v. Mashunkashey, supra.
 
 
 12
 The appellant complains of fraud extrinsic to the record in the divorce proceedings contending that McDowell prevented his wife from presenting her case by confining her in a Missouri institution in order to lay the basis for jurisdiction of the court on constructive service; concealed the non-delivery of the notice of publication from the divorce court; collusively agreed with Elizabeth Penny Dunkley to obtain a divorce from their respective spouses in order to later marry each other; and finally, concealed from the divorce court valid defenses available to the defendant in his action for divorce. In that connection, the guardian ad litem is accused of collusively agreeing with McDowell to conceal valid defenses of habitual drunkenness and adultery on the part of McDowell, and defenses pertaining to the jurisdiction of the court.
 
 
 13
 Upon a consideration of all of the evidence, the trial court found the issue of extrinsic fraud in favor of the appellees. It specifically found that the acts and conduct of the guardian ad litem were in accord with the Kansas statute; that he committed no fraud upon the court either individually or in collaboration with anyone else.
 
 
 14
 The evidence conclusively shows that appellant guardian, after being completely advised of all defenses open to her ward, and many conferences with her Missouri and Kansas counsel, and on one occasion with the divorce court, concluded that it would be to the best interests of her ward to procure a divorce from McDowell, if provisions were made for Marium's support. After discussion of the issue of alimony and support, she advised counsel to proceed with the divorce 'without contest'. The judgment of divorce entered the 14th day of October, 1944, specifically continued the issue of alimony and division of property to a future date, and so far as this record shows, that issue has not been concluded to this date. Since the divorce decree both the plaintiff in the divorce action and the guardian ad litem have died, the appellant has been appointed legal guardian, and the proceedings revived in the name of the legal representatives of the original parties.
 
 
 15
 We conclude that the judgment of the trial court is not clearly erroneous and it is affirmed.
 
 
 
 [1]
 Beatrice Johnson, sister of Marium Elizabeth McDowell, as her guardian, instituted this action. Since the trial, the City National Bank and Trust Company of Kansas City, Missouri, has succeeded her as guardian and curator